PORTER 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00219-CV







Jerry D. Porter and Lisa A. Porter, Appellants



v.



Stuart S. Nemir, Jr.; Stuart S. Nemir and Associates, Inc.; Renaissance Out-Patient


Program for Chemical Dependency; Texas Psychiatric Company, Inc. d/b/a


HCA Shoal Creek Hospital; and Patricio Botello Castro, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 91-11942, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING








 Appellants Jerry and Lisa Porter sued appellees Patricio Castro ("Castro") and
Stuart S. Nemir and Associates, Inc., Renaissance Out-Patient Program for Chemical
Dependency, and Texas Psychiatric Company, Inc. d/b/a HCA Shoal Creek Hospital (collectively,
the "Renaissance defendants") for negligence and gross negligence arising out of a sexual assault. 
The jury awarded damages for negligence, but failed to find that the appellees had committed
gross negligence. The trial court subsequently granted the Renaissance defendants' motion for
judgment non obstante veredicto, and rendered judgment against Castro individually. By five
points of error, the Porters appeal. We will affirm the trial court's judgment in part and reverse
the judgment in part.

BACKGROUND


 In October 1988, the Porters entered the Renaissance Program, an out-patient drug
and alcohol program. Jerry Porter was the patient and Lisa Porter entered the program as his
spouse. The Renaissance Program consisted of four weeks of intensive out-patient treatment
followed by fifty-two weeks of after care, involving a one-hour session once a week. At the time
the Porters enrolled, the Renaissance Program employed Castro as a certified alcohol and drug
abuse counselor ("CADAC" counselor). Castro, a recovering alcoholic, (1) led some of the sessions
the Porters were in during the intensive program. The Porters then enrolled in the after-care
program, but subsequently dropped out in August of 1989.

 In March 1990, Castro contacted Lisa after unsuccessfully attempting to reach Jerry
at his former place of employment. (2) Lisa informed him that Jerry had begun drinking again. 
During the next few weeks, Lisa and Castro talked several times over the phone and met for lunch
once to discuss Jerry's drinking problem. Lisa then invited Castro to her home on the evening
of April 6, 1990, when Jerry Porter was out of town. 

 The facts concerning the April 6th sexual encounter that forms the basis of this
lawsuit were hotly disputed at trial. Lisa testified that Castro sexually assaulted her against her
will, while Castro testified that Lisa consented to the sexual contact. (3) When Jerry returned home,
Lisa broached the subject of possibly engaging in sex with other men; Jerry became enraged and
physically attacked Lisa. 

 Lisa subsequently entered a hospital. She told Jerry about the incident with Castro
when she left the hospital. The Porters notified the Renaissance Program, which fired Castro as
a result. The Porters eventually divorced, and this lawsuit was filed. A jury found both Castro
and the Renaissance defendants negligent, but not grossly negligent, and awarded damages of
$2,400.00 to Jerry and $6,000.00 to Lisa. The trial court later granted the Renaissance
defendants' motion for judgment non obstante veredicto ("judgment n.o.v."). See Tex. R. Civ.
P. 301. The Porters appeal by five points of error, arguing that the trial court abused its
discretion by excluding evidence, striking their Deceptive Trade Practices Act pleadings, and
granting the Renaissance defendants' motion for judgment n.o.v.



DISCUSSION


 The Porters argue in their first point of error that the trial court abused its
discretion in excluding evidence of Castro's past sexual misconduct and his felony conviction for
sexual assault of a child. The Porters contend that the jury probably would have found both
Castro and the Renaissance defendants liable for gross negligence if it had known the full extent
of Castro's sexual history and, thus, the erroneous exclusion of the evidence was calculated to
cause and probably did cause the rendition of an improper judgment. See Tex. R. App. P.
81(b)(1); Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). 

 At trial, the Porters attempted to offer testimony of Castro's conviction for sexual
assault of his stepson in order to show that Castro had the intent to sexually abuse individuals who
trusted him. They also offered the evidence to show the Renaissance defendants' knowledge of
this conviction, and their failure to investigate the underlying incident to assess Castro's
competence. This proffer was based on the fact that Ulysses "Mac" McLester, Castro's
supervisor at Renaissance, knew about the criminal conviction and testified at Castro's sentencing
hearing. (4) Despite Castro's conviction and subsequent incarceration, Renaissance re-employed him
at the time of his release. Neither McLester nor anyone else at the Renaissance Program
investigated this criminal conviction further. If such an investigation had occurred, the full extent
of Castro's abuse would have been discovered. (5)

 The Porters assert that evidence of the criminal conviction and of other extraneous
acts of sexual abuse was relevant to show knowledge on the part of the Renaissance defendants
and was crucial to their claim for gross negligence, relying on Estate of Arrington v. Fields, 578
S.W.2d 173 (Tex. Civ. App.--Tyler 1979, writ ref'd n.r.e.), which held:



Where a master is charged with hiring or retaining in his employ an incompetent
servant, the servant's character is then in issue and may be proven by evidence of
reputation or of specific conduct for the purpose of showing that the master knew
or by exercising ordinary care should have known of the servant's incompetence.



Id. at 179; see Tex. R. Civ. Evid. 405(b) (specific instances of conduct admissible when character
is essential element of claim or defense). The trial court applied Rule 403, balancing the danger
of unfair prejudice against the probative value, and concluded that evidence of Castro's criminal
conviction and extraneous acts of sexual abuse of his other stepchildren was not admissible at
trial. See Tex. R. Civ. Evid. 403.

 The exclusion of evidence rests within the sound discretion of the trial court. New
Braunfels Factory Outlet Ctr., Inc. v. IHOP Realty Corp., 872 S.W.2d 303, 310 (Tex.
App.--Austin 1994, no writ). The trial court commits an abuse of discretion only when it acts in
an unreasonable or arbitrary manner, or acts without reference to any guiding principles. 
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991). The exclusion of evidence
ordinarily does not constitute reversible error unless the complaining party can demonstrate that
the whole case turns on the excluded evidence. Service Lloyds Ins. Co. v. Martin, 855 S.W.2d
816, 822 (Tex. App.--Dallas 1993, no writ); Turner v. Monsanto Co., 717 S.W.2d 378, 381 (Tex.
App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.).

 The Porters concede that evidence of Castro's sexual abuse of his stepson cannot
be used to show that he acted in conformity therewith, but urge its admissibility for other
purposes, such as proof of Castro's intent. See Tex. R. Civ. Evid. 404(b). Castro responds that
Rule 404(b) is not applicable because the Porters never alleged that the evidence was admissible
to show an intentional sexual assault. The Porters contend, however, that Lisa's consent was
hotly disputed, thereby implicitly putting Castro's intent at issue. See McLellan v. Benson, 877
S.W.2d 454, 458 (Tex. App.--Houston [1st Dist.] 1994, no writ) ("[W]hen the defensive theory
of consent is raised, a defendant necessarily disputes his intent to do the act without the consent
of the complainant, and his intent is thereby placed in issue."). We agree that the issue of
Castro's intent was raised through his assertion that the sexual contact was consensual and,
therefore, evidence of the sexual abuse of his stepson may have some relevance to show his intent
to abuse individuals who trusted him.

 However, Castro timely objected at trial to the admission of evidence of extraneous
bad acts under Rule 403, which provides that "[a]lthough relevant, evidence may be excluded if
its probative value is substantially outweighed by the danger of unfair prejudice." Tex. R. Civ.
Evid. 403 (emphasis added). (6) Little evidence in a lawsuit will not be prejudicial to at least one
party, but we must determine whether the trial court abused its discretion in concluding that the
danger of unfair prejudice substantially outweighed the probative value. Durbin v. Dal-Briar
Corp., 871 S.W.2d 263, 269-70 (Tex. App.--El Paso 1994, writ denied). 

 The Porters admit that "the largest danger is that the jury will find Castro and the
other defendants negligent simply because they dislike child molesters," but argue that this danger
could have been minimized through the use of careful voir dire and jury selection. The Porters
contend that the sexual abuse evidence was necessary to show Castro's unfitness as a counselor
and the Renaissance defendants' knowledge of that unfitness, and assert that the sexual abuse
conviction was relevant to the issues in this case because both incidents involved "sexual assaults
by Castro of people who were in a position of trust with him." The Porters apparently believe
that the evidence is relevant because of the similarity between the two incidents. 

 Although the evidence may have some probative value, the trial court could
reasonably have determined that its probative value was substantially outweighed by the danger
of unfair prejudice. Tex. R. Civ. Evid. 403. Although both incidents involved sexual conduct
on the part of Castro, the two are quite dissimilar. Castro's abuse of his stepson involved sexual
activity with a child incapable of giving legal consent. Castro testified on a bill of exception at
trial that he forced his stepson to engage in sex acts and that the sex acts occurred in Castro's
home over a period of years. In contrast, the encounter with Lisa involved a grown woman whom
Castro previously had expressed sexual interest in, who invited Castro to her home, and who did
not believe she had been sexually assaulted until her counselor and therapy group convinced her
of it at a later time. We conclude that the trial court was justified in finding that the former
incident was not significantly probative of the latter.

 In contrast, the danger of unfair prejudice was particularly great because the
extraneous conduct involved sexual abuse of a child. As the court noted in Montgomery v. State,
810 S.W.2d 372 (Tex. Crim. App. 1990), an indecency with a child case: "Both sexually related
misconduct and misconduct involving children are inherently inflammatory. . . . [T]here was a
grave potential for decision on an improper basis, as jurors may have lost sight of specific issues
they were called upon to decide and convicted appellant out of a revulsion against his parental
demeanor." Id. at 397. The trial court did not abuse its discretion in determining that the danger
of unfair prejudice substantially outweighed the probative value of the evidence. 

 We similarly conclude that Castro's conviction for sexual abuse of a child was not
admissible under Rule 609, which permits the admission of a criminal conviction if the court
determines "that the probative value . . . outweighs its prejudicial effect." Tex. R. Civ. Evid.
609(a). Because the court did not abuse its discretion in concluding that the probative value was
substantially outweighed by the danger of unfair prejudice, we fail to see how the trial court's
determination that the probative value of the conviction did not outweigh the prejudicial effect
could be an abuse. (7) 

 The Porters also cannot show that the whole case turned on the excluded evidence. 
Service Lloyds Ins. Co., 855 S.W.2d at 822. The Porters presented abundant evidence at trial of
Castro's intent: evidence that Castro had sex with at least three other patients before Lisa soon
after each patient left the program, and extensive expert testimony that Castro was "sexually
compulsive," had a "difficult time controlling his impulses," and had "grossly manipulated" Lisa's
sexual boundaries. This same testimony also provided evidence of the Renaissance defendants'
negligence and gross negligence because McLester knew of Castro's involvement with at least one
ex-patient, yet took no action to determine whether Castro was using his position as a counselor
to manipulate clients into having sex with him. The trial court did not abuse its discretion in
excluding the evidence as to Castro and the Renaissance defendants; nor can the Porters show that
exclusion of the evidence probably caused the rendition of an improper judgment. Gee, 765
S.W.2d at 396.

 Our decision is strengthened by the fact that the Porters never requested that the
trial court limit the evidence to the Renaissance defendants only, despite the fact that it is less
prejudicial as to the Renaissance defendants. Under Texas Rule of Civil Evidence 105, the
Porters' failure to request a limiting instruction precludes consideration of whether the trial court
abused its discretion in refusing to admit the evidence to show the Renaissance defendants'
negligence and gross negligence. Rule 105 provides: 



When evidence [which is admissible as to one party or for one purpose but not
admissible as to another party or for another purpose] is excluded, such exclusion
shall not be a ground for complaint on appeal unless the proponent expressly offers
the evidence for its limited, admissible purpose or limits its offer to the party
against whom it is admissible.



Tex. R. Civ. Evid. 105(b) (emphasis added); see Minnesota Mining & Mfg. Co. v. Nishika Ltd.,
885 S.W.2d 603, 631 (Tex. App.--Beaumont 1994, writ requested). The Porters offered the
evidence as proof of both Castro's and the Renaissance defendants' liability. As the proponents
of the evidence, they never limited the evidence solely to the issue of the Renaissance defendants'
liability. See Crum & Forster, Inc. v. Monsanto Co., 887 S.W.2d 103, 136 (Tex.
App.--Texarkana 1994, no writ) (burden on proponent of the evidence to request its admission for
a limited purpose). Therefore, because the Porters never limited their proffer of evidence to each
of the defendants individually, we cannot conclude that the trial court's exclusion of the evidence
constituted an abuse of discretion. We overrule the Porters' first point of error.

 The Porters argue in their second point of error that the trial court abused its
discretion in excluding evidence of Castro's reputation. Ramona Williams, a counselor who
treated Lisa after the incident, testified at trial on an offer of proof about Castro's reputation in
the mental health community as a sexual perpetrator and a convicted child molester. Rule 405
provides that "[i]n all cases in which evidence of character . . . of a person is admissible, proof
may be made by testimony as to reputation." Tex. R. Civ. Evid. 405(a). The trial court
concluded that evidence concerning Castro's conviction was not admissible; thus, reputation
testimony about the conviction logically was not admissible either. Having concluded that the
former ruling was not an abuse of discretion, we similarly conclude that the latter does not
constitute an abuse of discretion and overrule the second point of error.

 In their third point of error, the Porters contend that the trial court abused its
discretion in excluding evidence of Lisa Porter's state of mind. The trial court sustained the
defendants' hearsay objection to Williams's testimony about statements Lisa made during
counseling sessions. The Porters argue that the exclusion was harmful because it prevented them
from rebutting the Renaissance defendants' contention that Lisa consented to the sexual encounter. 
The Porters, however, never indicated the substance of the testimony through an offer of proof. 
When the trial court excludes evidence, failure to make an offer of proof waives any complaint
about the exclusion on appeal. Tex. R. Civ. Evid. 103(a)(2); Weng Enters., Inc. v. Embassy
World Travel, Inc., 837 S.W.2d 217, 221 (Tex. App.--Houston [1st Dist.] 1992, no writ) ("In the
absence of a bill of exception or offer of proof, [the appellate court] has no basis for reviewing
a contention that the trial court committed reversible error in excluding the testimony . . . .").

 The Porters also assert that McLester's statement that "you should have known
better," when Lisa informed him of the incident was not inadmissible hearsay. Because
McLester's statement was not offered for the truth of the matter asserted but only to show the
Renaissance defendants' callous attitude, the trial court erred in excluding McLester's statement. 
See Tex. R. Civ. Evid. 801(d). We conclude, however, that the jury heard the substance of
McLester's statement (8)
 and, thus, any error was harmless. Tex. R. App. P. 81(b); New Braunfels
Factory Outlet, 872 S.W.2d at 310. We overrule the Porters' third point of error. The
Porters assert in their fourth point of error that the trial court abused its discretion in striking their
pleadings pursuant to the Deceptive Trade Practices--Consumer Protection Act ("DTPA"), Tex.
Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1995). The Porters filed their
original petition on August 23, 1991, sent notice to the Renaissance defendants of their intent to
amend their petition to include the DTPA claims on June 9, 1993, and filed their second amended
petition alleging DTPA violations on July 7, 1993. The Renaissance defendants filed their motion
to strike on July 12, 1993, which the trial court granted on July 16, 1993. Trial began on July
19, 1993. 

 Texas Rule of Civil Procedure 63 provides that "[p]arties may amend their
pleadings . . . by filing such pleas with the clerk at such time as not to operate as a surprise to the
opposite party." Although parties may amend pleadings without leave of court up to seven days
before trial, the right to amend is subject to the opposing party's right to show surprise. See
Stevenson v. Koutzarov, 795 S.W.2d 313, 321 (Tex. App.--Houston [1st Dist.] 1990, writ denied). 
The trial court's decision to strike an amended pleading will not be overturned absent an abuse
of discretion. See Hardin v. Hardin, 597 S.W.2d 347, 349-50 (Tex. 1980). 

 Stevenson involved a plaintiff who sought to amend his pleadings to allege several
new causes of action eight days before trial began. The appellate court ruled that the trial court
abused its discretion in refusing to strike the amended pleadings because (1) the amended petitions
were filed more than two years after the Stevensons became a party; (2) the amendments were
made ten and eight days before trial; (3) the amendments introduced five new causes of action,
and increased damages from $30,000 to $16.5 million; (4) the late causes of action were not based
on newly discovered matters; and (5) the Stevensons proved surprise because they were not
prepared to defend on the new causes of action. Stevenson, 795 S.W.2d at 321. 

 In the present cause, the Porters (1) filed their amended petition asserting the
DTPA claims twenty-three months after they filed their original petition; (2) the amendment was
filed twelve days before trial; (3) the amendment introduced a new cause of action against the
Renaissance defendants, which involved five new material allegations that entitled the Porters to
statutory trebling of damages, court costs, and attorney's fees; (4) the late cause of action was
based on matters known to the Porters at the time they filed suit; and (5) the Renaissance
defendants alleged surprise, arguing that the late claim deprived them of a fair opportunity to
conduct discovery, to file a motion for summary judgment, and to prepare a counter-defense in
response to the new cause of action.

 Because of the similarity between the instant cause and Stevenson, where the
appellate court concluded that the trial court erred in refusing to strike the pleadings, we hold that
the trial court did not abuse its discretion in striking the Porters' amended pleadings filed twelve
days before trial was scheduled to begin. (9) We overrule the Porters' fourth point of error.

 In their fifth point of error, the Porters assert that the trial court erred in granting
the Renaissance defendants' motion for judgment n.o.v. because there was some evidence to
support the jury's verdict. The Porters pled two causes of action against the Renaissance
defendants, negligent hiring/retention (10) and negligent supervision. After a jury verdict finding the
Renaissance defendants negligent, the trial court granted judgment n.o.v. for the Renaissance
defendants apparently because it agreed with their argument that they owed no duty to the Porters. 
The Porters urge that the trial court erred in granting the motion. 

 A trial court may disregard a jury's findings and grant a judgment n.o.v. only if
there is no evidence to support the findings. Tex. R. Civ. P. 301; Mancorp, Inc. v. Culpepper,
802 S.W.2d 226, 227 (Tex. 1990). Negligent retention involves "the master's own negligence
in . . . retaining in his employ an incompetent servant whom the master knows or by the exercise
of reasonable care should have known was incompetent or unfit." Estate of Arrington, 578
S.W.2d at 178; see Doe v. Boys Clubs of Greater Dallas, Inc., 868 S.W.2d 942, 950 (Tex.
App.--Amarillo 1994, writ granted) (claim for negligent hiring/retention requires harm to be a
result of employment). The threshold inquiry in a negligent retention case involves duty, which
is a question of law for the trial court to decide from the facts surrounding the incident in
question. Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). Although
generally there is no duty to control the conduct of third parties, the employer-employee
relationship can create a duty on the part of the employer to control the employee's conduct. See
Otis Eng'g Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983). The injury to the plaintiff,
however, must be the result of the continued employment of an incompetent employee. Dieter
v. Baker Serv. Tools, 739 S.W.2d 405, 408 (Tex. App.--Corpus Christi 1987, writ denied). If the
law did not require such a connection, "an employer would essentially be an insurer of the safety
of every person who happens to come into contact with his employee simply because of his status
as an employee." Id. (quoting Bates v. Doria, 502 N.E.2d 454, 459 (Ill. App. Ct. 1986)). 

 The Renaissance defendants argue that the Porters' claims for negligent retention
and negligent supervision stretch these doctrines beyond any previous limits because the sexual
encounter occurred off-premises, while Castro was off-duty, and several months after the Porters
had left the program. Although the Renaissance defendants may be correct that they had no duty
under a theory of negligent supervision, we need not address the merits of this issue because of
our disposition of the duty question regarding the negligent-retention claim. The Renaissance
defendants contend that negligent retention authorizes employer liability for off-duty torts only
in situations where the employee commits the tort on the employer's premises or with the
employer's chattels. See Otis Eng'g, 668 S.W.2d at 309; 30 C.J.S. Employer-Employee
Relationship § 186, at 264 (1992) ("[I]n cases brought under [negligent retention], the tortious act
must, at the very least, occur during the tortfeasor's working hours or when the tort-feasor was
acting under color of employment."). We recognize that there are rational limits to an employer's
liability for the torts of its off-duty employees. Unlike the Renaissance defendants, however, we
believe that the facts of this case did create a duty on the part of the Renaissance defendants to
ensure that their employees were competent. 

 In determining whether a defendant was under a duty, the court will consider
several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed
against the social utility of the actor's conduct, the magnitude of the burden of guarding against
the injury, and the consequences of placing the burden on the defendant. Greater Houston
Transp. Co., 801 S.W.2d at 525. Of these, foreseeability of the risk is the dominant
consideration. El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987). In Greater Houston
Transportation Co., the supreme court addressed the analysis for duty in an employer-independent
contractor relationship. In concluding that the cab company had no duty to admonish its drivers
not to carry guns, the court focused on the foreseeability that a shooting would occur. Greater
Houston Transp. Co., 801 S.W.2d at 526. The court noted: "[B]efore liability will be imposed,
there must be sufficient evidence indicating that the defendant knew or should have known that
harm would eventually befall a victim. Absent such a showing, a defendant is absolved of
liability." Id. 

 We conclude that the injury Lisa suffered was foreseeable to the Renaissance
defendants. The Renaissance defendants knew or had reason to know that Castro was an
incompetent counselor before the incident with Lisa occurred. See Estate of Arrington, 578
S.W.2d at 178. Castro began a sexual relationship with Brenda Thibideaux about a week after
she left the program. Castro testified that the Renaissance Program had a policy prohibiting
employees from dating participants within two years after they completed the program. McLester
testified that he had informed Castro that it was inappropriate to date participants for at least one
year after they left the program. McLester testified that Castro approached him, asked when
dating was permissible, and then informed McLester that he was involved with Thibideaux. 
McLester never investigated whether the requisite amount of time had passed and never
questioned Castro about possible sexual liaisons with other patients and ex-patients. McLester
was also aware that an ex-patient had expressed an interest in having Castro's baby; this situation
was not investigated to determine whether Castro had behaved inappropriately. (11) Despite
these warning signals, the Renaissance defendants took no action regarding Castro's affair with
Thibideaux and failed to investigate whether Castro had become involved with other female
participants in the program. At trial, Castro admitted that he had sexual relations with at least
three other participants before Lisa. Castro also testified that if the Renaissance defendants had
approached him in a non-threatening manner, he would have admitted these previous sexual
encounters. The Renaissance defendants clearly had reason to suspect that Castro might be an
incompetent employee based on his affair with at least one ex-patient; with any type of
investigation, they would have had concrete knowledge of Castro's unfitness as a counselor. We
conclude that the Renaissance defendants had a duty to investigate Castro's conduct at the time
they became aware of his relationship with Thibideaux. See Greater Houston Transp. Co., 801
S.W.2d at 526 (employer can be held liable if sufficient evidence that employer knew or had
reason to know that harm would occur). 

 The fact that the sexual encounter occurred off-premises and after-hours does not
absolve the Renaissance defendants of liability. In this situation, Castro met his victims through
his job, cultivated their trust through his role as a CADAC counselor, and then manipulated his
position for his own sexual gratification. Castro gained access to Lisa's confidence and to her
home through his cloak of responsibility as a Renaissance counselor. We conclude that the
Renaissance defendants owed Lisa a duty to use reasonable care in the hiring and retention of
competent, sexually-appropriate counselors. 

 Indeed, we believe that the Renaissance defendants had a heightened obligation to
hire and retain competent counselors because their program treated psychologically fragile
clientele. Several Texas cases have held that a higher obligation is owed to certain groups because
of their vulnerabilities. See, e.g., Boys Club, 868 S.W.2d at 951 (higher duty owed to children);
Deerings W. Nursing Ctr. v. Scott, 787 S.W.2d 494, 498-99 (Tex. App.--El Paso 1990, writ
denied) (Fuller, J., concurring) (high degree of care owed to elderly). Testimony at trial indicated
that persons in a program like Renaissance's often have underlying psychological disabilities such
as sexual abuse, post-traumatic stress disorder, severe depression, and difficulty with interpersonal
relationships. Individuals, such as Lisa, who have been sexually abused as children are especially
vulnerable to sexual exploitation by a counselor. Given the vulnerable population it served, we
agree with the Porters that the Renaissance defendants owed a duty to their clients to ensure that
their counselors were competent. We conclude that the trial court erred in granting judgment
n.o.v. because the Renaissance defendants had a duty to examine Castro's competence at the time
they discovered his violation of the program's policies. We sustain the Porters' fifth point of
error.



CONCLUSION


 The trial court erred only in granting the Renaissance defendants' motion for
judgment n.o.v. Because the Renaissance defendants were liable for the negligent retention of
Castro, we need not address whether they were also liable for negligent supervision. We reverse
the portion of the trial court's judgment that orders that the Porters take nothing against the
Renaissance defendants, and render judgment that Castro and the Renaissance defendants are
jointly and severally liable to the Porters for the injuries they suffered. The judgment of the trial
court is affirmed in all other respects.



 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith; Justice Powers not participating

Affirmed in Part and Reversed and Rendered in Part

Filed: May 3, 1994

Publish 
1.   Testimony at trial indicated that many drug and alcohol treatment programs employ
counselors who are recovering alcoholics or addicts.
2.   The record indicates that Jerry was employed as a chief building engineer by Balcor
Property Management.
3.   The sexual encounter between Lisa and Castro involved Castro masturbating on
Lisa's chest.
4.   Castro informed McLester of the molestation in June of 1988 when charges were
filed. Castro indicated to McLester that the abuse had occurred one time during a period
of heavy drinking.
5.   Castro admitted in deposition before his civil trial that the abuse occurred over
several years, during periods of sobriety as well as inebriation, and culminated in his
forcing his stepson to perform oral sex on him.
6.   Castro argues that this Court should adopt a four-part test announced in McLellan
in reviewing a trial court's decision to exclude. See McLellan, 877 S.W.2d at 458. The
McLellan court applied to a civil suit for sexual assault the standard announced in a previous
criminal case, Montgomery v. State, 810 S.W.2d 372, 392-93 (Tex. Crim. App. 1990). See
McLellan, 877 S.W.2d at 458-59. Although the civil and criminal rules 403 use similar
language, we are hesitant to apply the Montgomery standard to civil cases because of the
stringent standards it developed for determining when evidence must be excluded. See
McLellan, 877 S.W.2d at 457 (advocating use of test despite its harshness). The Montgomery
test undoubtedly makes sense in a criminal case, where the defendant risks loss of liberty if an
extraneous offense is erroneously admitted. See Montgomery, 810 S.W.2d at 395. A similar
danger does not exist here, and we fear that the test's application might require the exclusion
of highly relevant evidence in many civil cases. Therefore, we decline to adopt the
Montgomery test in civil cases.
7.   The Porters argue that the prior acts were admissible on the issue of punitive
damages as to both Castro and the Renaissance defendants. Carr v. Galvan, 650 S.W.2d
864, 869 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.); Burleson v. Finley, 581 S.W.2d
304, 307-08 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.). The cases the Porters cite were
decided before the effective date of the Rules of Civil Evidence. We conclude that the trial
court did not err in determining that the probative value was substantially outweighed by the
danger of unfair prejudice because the admission of evidence for punitive damages is subject to
Rule 403 analysis. See Castro v. Sebesta, 808 S.W.2d 189, 194 (Tex. App.--Houston [1st
Dist.] 1991, no writ) (analyzing punitive damages evidence under Rules of Civil Evidence). 

 The Porters also contend that the evidence was admissible to show the bases for their
expert witnesses' testimony. However, the conviction is admissible only for the limited
purpose of identifying the bases of the experts' opinions. Minnesota Mining & Mfg. Co. v.
Nishika Ltd., 885 S.W.2d 603, 631 (Tex. App.--Beaumont 1994, writ requested). The Porters
never requested that the evidence be limited to this purpose; they have thus waived any error
in this regard. See Tex. R. Civ. Evid. 105(b) (if evidence admissible for one purpose but not
another is excluded, proponent cannot complain on appeal unless expressly offered evidence
for limited admissible purpose only).
8.   Lisa: I told Mac what happened.


Q:    So you are saying Mac said you should have known better?


Lisa: Yeah, which was real painful because I wasn't out looking for this
situation.

9. The Porters contend that the trial court abused its discretion because the
Renaissance defendants did not move for a continuance and, thus, did not show surprise. 
The Porters rely on several cases holding that a party must move for a continuance in
order to appeal the failure to strike an amended pleading. See, e.g., Louisiana & Ark. Ry. v.
Blakely, 773 S.W.2d 595, 597 (Tex. App.--Texarkana 1989, writ denied). All of the cases the
Porters rely on involved instances where the trial court allowed the amended pleading. As the
court in Blakely noted: "To establish an abuse of discretion by the trial court in allowing the
amendment, the complaining party must show surprise and request a continuance." Id.
(emphasis added). The Renaissance defendants correctly assert that it would be senseless to
require them to request a continuance when the court has granted their motion to strike the
amended pleadings because they have received their requested relief. See id. (noting that
requiring a party to move for a continuance to preserve error on appeal is consistent with
notion that a party must exhaust all of its remedies in trial court). 
10. Although the Porters allege both negligent hiring and retention, their claim
principally involves the negligent retention of Castro.
11. We also note that McLester, as Castro's supervisor, was aware of Castro's sexual-abuse conviction since McLester had testified at Castro's sentencing hearing.