**George McLELLAN, Appellant,**

v.

**Grace BENSON, Appellee.**

**No. 01–93–00215–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 19, 1994.

Carla J. Bishop, Mary C. Thompson, Houston, for appellant.

Richard N. Countiss, John E. Williams, Melinda L. Wesner, Houston, for appellee.

Before DUGGAN, HUTSON–DUNN and ANDELL, JJ.

## OPINION ON MOTION FOR REHEARING

DUGGAN, Justice.

Appellant has filed a motion for rehearing in this case. We deny the motion, but withdraw our initial opinion of April 21, 1994, and substitute this one in its stead.

The trial court entered judgment on a jury verdict in a suit for sexual assault and awarded appellee, Grace Benson, $315,220 in actual damages and $25,000 in exemplary damages against appellant, George McLellan.

In his sole point of error, appellant contends that the trial court erred in allowing testimony regarding an unrelated extraneous act in violation of TEX.R.CIV.EVID. 404(b). We affirm the trial court's judgment.

On March 14, 1983, appellee planned to meet a girlfriend at a social function for single adults held at a Houston restaurant. While waiting for her friend, she met appellant and they talked for a period of time. After becoming somewhat acquainted with appellant, appellee agreed to a date with him for the next Saturday night. About an hour later, appellee's friend appeared, and appellant suggested they all go to dinner together at another restaurant. The friend declined, but appellee accepted.

After drinks and dinner at the restaurant, appellant persuaded appellee to visit his townhouse nearby, which he told her had been redecorated. Upon entering the townhouse, appellant locked the dead bolt on the front door, and began showing her his home.

As they reached the stairs leading to his bedroom, appellee testified appellant went into a rage, grabbed her wrists, and dragged her up the stairs into his bedroom. There, he threw her on the bed, removed her shoes, and said, "I want to eat you." Appellee fought him both physically and verbally. Appellant fondled her breasts, lifted her dress, and kissed her stomach. Appellee testified she grabbed his hair in an attempt to pull his head away, but he hit her on the side of her face, knocking her head back. He then picked her up by holding her under the arms, turned her around, and threw her across the bed. He then jumped on top of her and pulled off her panty hose and underwear.

Appellee bolted up in the bed and yelled, "No," but appellant put his hand in the middle of her chest and shoved her back to the bed. Appellant, who was approximately 6'1" tall and weighed 200 pounds, put all of his weight on her chest, unzipped his pants, and had sexual intercourse with her.

Appellant then went into the bathroom and began to run water in the tub. Appellee believed he was going to drown her. However, when appellant returned, he said he was going to have sex with her again. To save

her life, appellee pretended to submit. Appellant then became docile, and they spoke of marriage and children. Appellee realized that appellant was more docile when she permitted him to be in control.

She pretended to have menstrual cramps and told appellant she needed a prescription medicine at her home. He eventually agreed to take her back to her car (left at the restaurant) and followed her home. The next morning, appellee reported the rape to the Houston police and went to the hospital for a physical examination. Appellant did not deny the intercourse, but claimed it was consensual.

In appellant's sole point of error, he claims that the trial court erred by allowing the introduction of extraneous evidence.

Over appellant's objection, the trial court allowed the testimony of NAP, who accused appellant of sexually assaulting her 26 months earlier, in 1981. NAP testified that she met appellant at a 1979–80 New Year's Eve party at a friend's home. About a year later, she saw him at a grocery store, and they became reacquainted. She agreed to go out with appellant on January 17, 1981.

Appellant took her to a restaurant and then to a club to hear music. She decided that appellant was not her type, told him she had a headache, and asked him to take her home. Appellant agreed, but instead drove to his apartment, which he said had been recently redecorated. He told her he had aspirin for her headache and that his apartment was closer than hers. Over her protests, he persuaded her to go inside for a quick tour.

After they entered the apartment, he locked the door, gave her some aspirin, and began showing her the apartment. When they reached the bedroom, appellant turned her around, gently pushed her onto the bed, and suggested she lie down to help her headache. She protested and again requested he take her home. He then began to fondle her and, when she resisted, he became angry and mean. She testified that he then forcibly removed her pants and panty hose, and had sexual intercourse and performed oral sex on

her without her consent. She was afraid appellant was going to kill her.

After these acts, appellant's demeanor changed, and he acted concerned about her. Eventually, he agreed to take her home. NAP reported the event to the police the next day. Appellant was not prosecuted for the acts of January 17, 1981.

Appellant argues that TEX.R.CIV.EVID. 404(b) disallows NAP's testimony; that it was improperly used to prove his character and impeach his credibility; and that it was highly prejudicial and irrelevant. Rule 404(b) provides that:

[e]vidence of other wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Appellant asserts the trial court erred by admitting the testimony of NAP because: (1) evidence of an unrelated extraneous act may not be used to prove the character of appellant to show that he acted in conformity therewith; (2) evidence of prior wrongful acts may not be used to impeach appellant; and (3) the evidence was irrelevant and highly prejudicial.

Rule 404(b) of the Texas Rules of Civil Evidence ("the civil rule") tracks the language of TEX.R.CRIM.EVID. 404(b) ("the criminal rule") almost exactly. The civil rule prohibits the use of "other wrongs or acts," while the criminal rule prohibits the use of "crimes, other wrongs and acts," a difference analysts have found not significant. Newell H. Blakely & Cathleen C. Herasimchuk, *Article IV: Relevancy and Its Limits*, 30 HOUS. L.R. 281, 372–373 n. 417 (1993).

The procedure to test the admissibility of extraneous misconduct evidence in *criminal* cases is set out in *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1991) (op. on reh'g). *See also Vernon v. State*, 841 S.W.2d 407, 410–11 (Tex.Crim.App.1992); *Pavlacka v. State*, 848 S.W.2d 325, 327 (Tex.App.— Houston [1st Dist.] 1993, pet. granted); *Lazcano v. State*, 836 S.W.2d 654, 657 (Tex.

App.—El Paso 1992, pet. ref'd); *Contreras v. State*, 838 S.W.2d 594, 600 (Tex.App.—Corpus Christi 1992, pet. ref'd) (applying the *Montgomery* test and upholding admission of evidence of a similar extraneous act to prove defendant's identity and intent in a sexual assault case). If a trial court's decision to admit extraneous misconduct evidence meets the stringent test required by criminal law, a similar test should be adequate in civil cases, where fewer constitutional concerns are involved and the losing party does not face incarceration. The trial judge considered the requirements of criminal rule 404(b) to be applicable to civil rule 404(b) as shown by his rulings. We will conduct our review under civil rule 404(b) by using the legal analysis enunciated in *Montgomery* for criminal rule 404(b).

■ When evidence of an extraneous act or offense is offered, the opponent must timely and properly object in order to preserve error. *Montgomery*, 810 S.W.2d at 387. An objection that the proffered evidence is inadmissible under rule 404(b) is the optimal way to inform the trial court of the nature of the complaint; however, an objection that the evidence is an extraneous act or is not relevant, while less precise, will ordinarily suffice as well. *Id.*

■ After proper objection has been raised, the trial court must determine whether, under rule 401, the proffered evidence is relevant, i.e., whether it has "any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* at 375–76. If it does, the evidence is admissible unless its opponent shows that it should be excluded for some other reason. *Id.* at 376, 391.

■ If the "extraneous offense evidence has no relevancy apart from supporting an inference of character conformity, it is absolutely inadmissible under Rule 404(b)." *Id.* at 387. If, however, the proponent persuades the trial court that the evidence is relevant to a material issue, such as intent, the court may rule the evidence admissible. *Id.* If the opponent then makes a timely further request, the trial judge should instruct the jury that the evidence is to be used only for the relevant purpose. *Id.* at 387–88.

■ If the opponent of the evidence further objects that the proffered evidence is unfairly prejudicial, and hence inadmissible under rule 403, the trial court must then conduct the balancing test mandated by that rule. *Id.* at 388–89. The trial court "is to *admit relevant evidence* unless the probative value of that extraneous evidence is *substantially* outweighed by the danger of unfair prejudice to the defendant." *Montgomery*, 810 S.W.2d at 389 (quoting *Crank v. State*, 761 S.W.2d 328, 342 n. 5 (Tex.Crim.App. 1988)) (emphasis in originals). Because rule 403 presumes that relevant evidence is admissible, the trial court should favor admission in close cases. *Montgomery*, 810 S.W.2d at 389.

■ At trial, appellee argued that NAP's testimony was admissible (1) to show appellant's intent, motive, and state of mind, (2) to justify the imposition of exemplary damages, and (3) to impeach him. The trial court heard NAP's testimony outside the jury's presence and admitted[1] it before the jury with the instruction that they were to use the testimony only on the contested issue of intent or consent. The court repeated this instruction in the charge.

Appellant argues that the trial court erred by confusing intent with consent, and that

---

1. In announcing his decision to admit the evidence, the trial court stated, outside the jury's presence:

> The Court makes a finding that this testimony is relevant to a material contested issue in this case; that is, consent or intent, and the Court finds that its probative value outweighs the prejudicial effect, I will allow the jury to hear it. I will instruct the jury that they're to consider it only for the purposes of intent in this case.

> . . . .

> I understand that this testimony is harmful, but I'm admitting it because, as I say, the issue here is consent. That's hotly contested and this is a similar event that my interpretation of the case law is that it would be admissible and that it's got probative value, particularly in light of the fact that there's a similarity of characteristics between the two rapes. And that's what I'm basing my ruling on.

the only disputed issue was appellee's consent, not appellant's intent; appellant admitted that he intended to have sexual intercourse with her. Because appellee's consent to the intercourse is the sole disputed issue, appellant argues his intent is not relevant, and hence not admissible. We disagree. Because appellee sued appellant for *intentional* sexual assault, appellant's intent is squarely at issue; appellant's defense that she consented is the flip side of this issue. In sexual assault cases,

> [w]hen the defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without the consent of the complainant, and his intent is thereby placed in issue.

*Wiggins v. State,* 778 S.W.2d 877, 884–85 (Tex.App.—Dallas 1989, pet. ref'd) citing *Rubio v. State,* 607 S.W.2d 498, 501 (Tex.Crim. App.1980)).

When reviewing a trial court's ruling on admissibility of evidence, an appellate court must uphold the trial court's decision absent an abuse of discretion, giving the same deference to the trial judge's ruling on 404(b) relevancy that it affords any other relevancy question. *Montgomery,* 810 S.W.2d at 391. Likewise, appellate courts must use the abuse of discretion standard when reviewing the trial court's decision whether to exclude evidence under the probative value versus prejudicial effect balancing test of rule 403. *Id.*

We hold that the trial court did not abuse its discretion in finding NAP's testimony was *relevant* to the material issue of appellant's intent.

■ Appellant timely objected that the danger of unfair prejudice substantially outweighed the probative value of the proffered evidence. The trial judge then (1) conducted *Montgomery's* rule 403 balancing test out of the jury's presence, (2) heard NAP's testimony and counsel's arguments, (3) recognized that the evidence of the extraneous acts was "horrible testimony" and highly prejudicial to appellant, and (4) announced that the evidence would be admitted.

In criminal cases, in reviewing a trial court's decision whether to exclude evidence of extraneous misconduct under rule 403, an appellate court must evaluate the judge's decision in light of certain relevant criteria:

1. the opposing side must seriously contest the ultimate issue for which the evidence is being offered;
2. the State, as proponent, must have a compelling need for the evidence to establish the ultimate issue to which the extraneous misconduct was relevant;
3. the probative value of the extraneous misconduct, alone or in combination with other evidence, must be particularly compelling; and
4. the misconduct must be of such a nature that a jury instruction to use it only for its proffered purpose could likely be effective.

*Montgomery,* 810 S.W.2d at 392–93. When an examination of the record reveals that one of the relevant criteria reasonably leads to a risk that the probative value of the proffered evidence is substantially outweighed by unfair prejudice, then the appellate court should find that the trial court abused its discretion by failing to exclude it. *Id.* at 393.

Appellee established *Montgomery's* first criterion when she showed that the issue of appellant's intent, or appellee's consent, the ultimate issue for which the evidence was offered, was hotly contested. To do so, appellee's counsel called appellant as an adverse witness and asked him: "There's no doubt in your mind that appellee has taken strong issue with you about whether or not there was consent that night. Do you agree on that?" Appellant answered: "I think we can agree on that."

As to appellee's "compelling need" for NAP's testimony, we look to the amount and strength of appellee's other evidence to establish intent or consent. *Id.* at 390. NAP's testimony was the only available evidence of appellant's intent other than the conflicting testimony of the interested parties; the second criterion was met.

As to *Montgomery's* third criterion, the "particularly compelling" probative value of the extraneous acts, we find at least 14 similarities between appellant's conduct in the

extraneous NAP event and in the present case. Collectively, these similarities make the extraneous event highly probative of appellant's intent. Four of these similarities, viewed in isolation, are indicative of innocuous intent to engage in normal dating:

(1) appellant met each woman in a social setting;

(2) he initially presented a charming and nice demeanor;

(3) he took each woman to dinner; and

(4) he escorted each woman home afterwards.

The 10 other similarities, however, indicate intent to have sexual intercourse with appellee without her consent:

(5) both incidents occurred during the first date;

(6) when each woman asked to be taken home, he refused to do so despite her protests;

(7) appellant lured each woman into his apartment on the pretext of seeing his newly redecorated residence;

(8) immediately upon entering his residence, he locked each woman in the house;

(9) he used the tour of his residence as a means to get each woman near or into his bedroom;

(10) he became enraged when each woman rejected his sexual advances, forced each onto the bed, and removed each woman's lower body clothing;

(11) he told each woman he wanted to perform oral sex on her;

(12) he had sexual intercourse with each woman;

(13) his rage and behavior caused each woman to fear for her life;

(14) after each woman adopted conciliatory behavior and appeared submissive, he became calm and caring and made future plans with each.

These similarities give strong probative value to the extraneous act as evidence of appellant's intent.

Appellant argues that even if NAP's testimony was otherwise admissible, its temporal remoteness, some 26 months before the act involving appellee, fatally weakens its probative value. We disagree. Remoteness is merely one factor to be considered in determining whether an extraneous offense is admissible. *Plante v. State*, 692 S.W.2d 487, 491 (Tex.Crim.App.1985). This Court found a sexual assault seven years earlier not to be too remote in *Linder v. State*, 828 S.W.2d 290, 297 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

Given the striking similarities between the acts involving appellant and NAP and the acts involving appellant and appellee, we hold the trial court was not unreasonable in finding that the passage of 26 months did not fatally weaken the probative value of the extraneous act. Therefore, we find the third criterion, that the probative value of the extraneous conduct is "particularly compelling," is met.

*Montgomery's* fourth and last criterion is that evidence of the extraneous incident be such that a jury instruction to use it only for its proffered purpose, i.e., to show appellant's intent or appellee's consent, could likely be effective in neutralizing the danger of unfair prejudice. The trial court reduced the risk of misuse of the evidence by giving the jury clear instructions in advance of their hearing it. As NAP was called to testify, the judge told the jury that they were "only to consider this witness's testimony as it bears on the contested question of intent or consent in this case." Later, in the charge, the court further instructed the jury, "You have heard testimony of NAP concerning an extraneous act. You are to consider this testimony only as to the question of consent of [appellee]." We find that the trial court did not abuse its discretion in deciding that jury instructions and other safeguards "could likely be effective in neutralizing the danger of unfair prejudice." *Montgomery*, 810 S.W.2d at 392–93.

We find the trial court did not abuse its discretion in admitting the testimony of NAP to show that appellant intended to have sexual intercourse with appellee without her consent. We overrule appellant's point of error.

We affirm the judgment.