Jerry D. **PORTER** and Lisa A. **Porter, Appellants,**

v.

Stuart S. **NEMIR, Jr.; Stuart S. Nemir and Associates, Inc.; Renaissance Out–Patient Program for Chemical Dependency; Texas Psychiatric Company, Inc. d/b/a HCA Shoal Creek Hospital; and Patricio Botello Castro, Appellees.**

No. 03–94–00219–CV.

Court of Appeals of Texas, Austin.

May 3, 1995.

Rehearing Overruled July 12, 1995.

Christina Lewis [Signed Brief], Austin, for appellants.

David M. Ward [Signed Brief], Wilson, Grosenheider & Burns, Austin, for appellee Patricio Botello Castro.

Douglas W. Alexander, [Signed Brief], Brown McCarroll & Oaks Hartline, Austin, for appellees Stuart S. Nemir & Associates, Inc., Renaissance Out–Patient Program for Chemical Dependency, Texas Psychiatric Co., Inc., d/b/a HCA Shoal Creek Hosp.

Before POWERS, KIDD and B.A. SMITH, JJ.

KIDD, Justice.

Appellants Jerry and Lisa Porter sued appellees Patricio Castro ("Castro") and Stuart S. Nemir and Associates, Inc., Renaissance Out–Patient Program for Chemical Dependency, and Texas Psychiatric Company, Inc. d/b/a HCA Shoal Creek Hospital (collectively, the "Renaissance defendants") for negligence and gross negligence arising out of a sexual assault. The jury awarded damages for negligence, but failed to find that the appellees had committed gross negligence. The trial court subsequently granted the Renaissance defendants' motion for judgment non obstante veredicto, and rendered judgment against Castro individually. By five points of error, the Porters appeal. We will affirm the trial court's judgment in part and reverse the judgment in part.

## BACKGROUND

In October 1988, the Porters entered the Renaissance Program, an out-patient drug and alcohol program. Jerry Porter was the patient and Lisa Porter entered the program as his spouse. The Renaissance Program consisted of four weeks of intensive out-patient treatment followed by fifty-two weeks of after care, involving a one-hour session once a week. At the time the Porters enrolled, the Renaissance Program employed Castro as a certified alcohol and drug abuse counselor ("CADAC" counselor). Castro, a recovering alcoholic,[1] led some of the sessions the Porters were in during the intensive program. The Porters then enrolled in the after-care program, but subsequently dropped out in August of 1989.

In March 1990, Castro contacted Lisa after unsuccessfully attempting to reach Jerry at his former place of employment.[2] Lisa informed him that Jerry had begun drinking again. During the next few weeks, Lisa and Castro talked several times over the phone and met for lunch once to discuss Jerry's drinking problem. Lisa then invited Castro to her home on the evening of April 6, 1990, when Jerry Porter was out of town.

The facts concerning the April 6th sexual encounter that forms the basis of this lawsuit were hotly disputed at trial. Lisa testified that Castro sexually assaulted her against

1. Testimony at trial indicated that many drug and alcohol treatment programs employ counselors who are recovering alcoholics or addicts.

2. The record indicates that Jerry was employed as a chief building engineer by Balcor Property Management.

her will, while Castro testified that Lisa consented to the sexual contact.[3] When Jerry returned home, Lisa broached the subject of possibly engaging in sex with other men; Jerry became enraged and physically attacked Lisa.

Lisa subsequently entered a hospital. She told Jerry about the incident with Castro when she left the hospital. The Porters notified the Renaissance Program, which fired Castro as a result. The Porters eventually divorced, and this lawsuit was filed. A jury found both Castro and the Renaissance defendants negligent, but not grossly negligent, and awarded damages of $2,400.00 to Jerry and $6,000.00 to Lisa. The trial court later granted the Renaissance defendants' motion for judgment non obstante veredicto ("judgment n.o.v."). See Tex.R.Civ.P. 301. The Porters appeal by five points of error, arguing that the trial court abused its discretion by excluding evidence, striking their Deceptive Trade Practices Act pleadings, and granting the Renaissance defendants' motion for judgment n.o.v.

## DISCUSSION

The Porters argue in their first point of error that the trial court abused its discretion in excluding evidence of Castro's past sexual misconduct and his felony conviction for sexual assault of a child. The Porters contend that the jury probably would have found both Castro and the Renaissance defendants liable for gross negligence if it had known the full extent of Castro's sexual history and, thus, the erroneous exclusion of the evidence was calculated to cause and probably did cause the rendition of an improper judgment. See Tex.R.App.P. 81(b)(1); Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex.1989).

At trial, the Porters attempted to offer testimony of Castro's conviction for sexual assault of his stepson in order to show that Castro had the intent to sexually abuse individuals who trusted him. They also offered the evidence to show the Renaissance defendants' knowledge of this conviction, and their failure to investigate the underlying incident to assess Castro's competence. This proffer was based on the fact that Ulysses "Mac" McLester, Castro's supervisor at Renaissance, knew about the criminal conviction and testified at Castro's sentencing hearing.[4] Despite Castro's conviction and subsequent incarceration, Renaissance reemployed him at the time of his release. Neither McLester nor anyone else at the Renaissance Program investigated this criminal conviction further. If such an investigation had occurred, the full extent of Castro's abuse would have been discovered.[5]

The Porters assert that evidence of the criminal conviction and of other extraneous acts of sexual abuse was relevant to show knowledge on the part of the Renaissance defendants and was crucial to their claim for gross negligence, relying on *Estate of Arrington v. Fields*, 578 S.W.2d 173 (Tex.Civ. App.—Tyler 1979, writ ref'd n.r.e.), which held:

> Where a master is charged with hiring or retaining in his employ an incompetent servant, the servant's character is then in issue and may be proven by evidence of reputation or of specific conduct for the purpose of showing that the master knew or by exercising ordinary care should have known of the servant's incompetence.

*Id.* at 179; *see* Tex.R.Civ.Evid. 405(b) (specific instances of conduct admissible when character is essential element of claim or defense). The trial court applied Rule 403, balancing the danger of unfair prejudice against the probative value, and concluded that evidence of Castro's criminal conviction and extraneous acts of sexual abuse of his other stepchildren was not admissible at trial. *See* Tex.R.Civ.Evid. 403.

---

**3.** The sexual encounter between Lisa and Castro involved Castro masturbating on Lisa's chest.

**4.** Castro informed McLester of the molestation in June of 1988 when charges were filed. Castro indicated to McLester that the abuse had occurred one time during a period of heavy drinking.

**5.** Castro admitted in deposition before his civil trial that the abuse occurred over several years, during periods of sobriety as well as inebriation, and culminated in his forcing his stepson to perform oral sex on him.

■ The exclusion of evidence rests within the sound discretion of the trial court. *New Braunfels Factory Outlet Ctr., Inc. v. IHOP Realty Corp.*, 872 S.W.2d 303, 310 (Tex.App.—Austin 1994, no writ). The trial court commits an abuse of discretion only when it acts in an unreasonable or arbitrary manner, or acts without reference to any guiding principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). The exclusion of evidence ordinarily does not constitute reversible error unless the complaining party can demonstrate that the whole case turns on the excluded evidence. *Service Lloyds Ins. Co. v. Martin*, 855 S.W.2d 816, 822 (Tex.App.—Dallas 1993, no writ); *Turner v. Monsanto Co.*, 717 S.W.2d 378, 381 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

■ The Porters concede that evidence of Castro's sexual abuse of his stepson cannot be used to show that he acted in conformity therewith, but urge its admissibility for other purposes, such as proof of Castro's intent. *See* Tex.R.Civ.Evid. 404(b). Castro responds that Rule 404(b) is not applicable because the Porters never alleged that the evidence was admissible to show an *intentional* sexual assault. The Porters contend, however, that Lisa's consent was hotly disputed, thereby implicitly putting Castro's intent at issue. *See McLellan v. Benson*, 877 S.W.2d 454, 458 (Tex.App.—Houston [1st Dist.] 1994, no writ) ("[W]hen the defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without the consent of the complainant, and his intent is thereby placed in issue."). We agree that the issue of Castro's intent was raised through his assertion that the sexual contact was consensual and, therefore, evidence of the sexual abuse of his stepson *may* have some relevance to show his intent to abuse individuals who trusted him.

However, Castro timely objected at trial to the admission of evidence of extraneous bad acts under Rule 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice." Tex.R.Civ.Evid. 403 (emphasis added).[6] Little evidence in a lawsuit will not be prejudicial to at least one party, but we must determine whether the trial court abused its discretion in concluding that the danger of *unfair prejudice* substantially outweighed the probative value. *Durbin v. Dal–Briar Corp.*, 871 S.W.2d 263, 269–70 (Tex.App.—El Paso 1994, writ denied).

The Porters admit that "the largest danger is that the jury will find Castro and the other defendants negligent simply because they dislike child molesters," but argue that this danger could have been minimized through the use of careful voir dire and jury selection. The Porters contend that the sexual abuse evidence was necessary to show Castro's unfitness as a counselor and the Renaissance defendants' knowledge of that unfitness, and assert that the sexual abuse conviction was relevant to the issues in this case because both incidents involved "sexual assaults by Castro of people who were in a position of trust with him." The Porters apparently believe that the evidence is relevant because of the similarity between the two incidents.

Although the evidence may have some probative value, the trial court could reasonably have determined that its probative value was substantially outweighed by the danger of unfair prejudice. Tex.R.Civ.Evid. 403. Although both incidents involved sexual conduct on the part of Castro, the two are quite dissimilar. Castro's abuse of his stepson in-

---

6. Castro argues that this Court should adopt a four-part test announced in *McLellan* in reviewing a trial court's decision to exclude. *See McLellan*, 877 S.W.2d at 458. The *McLellan* court applied to a civil suit for sexual assault the standard announced in a previous criminal case, *Montgomery v. State*, 810 S.W.2d 372, 392–93 (Tex.Crim.App.1990). *See McLellan*, 877 S.W.2d at 458–59. Although the civil and criminal rules 403 use similar language, we are hesitant to apply the *Montgomery* standard to civil cases because of the stringent standards it developed for determining when evidence *must be excluded*. *See McLellan*, 877 S.W.2d at 457 (advocating use of test despite its harshness). The *Montgomery* test undoubtedly makes sense in a criminal case, where the defendant risks loss of liberty if an extraneous offense is erroneously admitted. *See Montgomery*, 810 S.W.2d at 395. A similar danger does not exist here, and we fear that the test's application might require the exclusion of highly relevant evidence in many civil cases. Therefore, we decline to adopt the *Montgomery* test in civil cases.

volved sexual activity with a child incapable of giving legal consent. Castro testified on a bill of exception at trial that he forced his stepson to engage in sex acts and that the sex acts occurred in Castro's home over a period of years. In contrast, the encounter with Lisa involved a grown woman whom Castro previously had expressed sexual interest in, who invited Castro to her home, and who did not believe she had been sexually assaulted until her counselor and therapy group convinced her of it at a later time. We conclude that the trial court was justified in finding that the former incident was not significantly probative of the latter.

In contrast, the danger of unfair prejudice was particularly great because the extraneous conduct involved sexual abuse of a child. As the court noted in *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1990), an indecency with a child case: "Both sexually related misconduct and misconduct involving children are inherently inflammatory.... [T]here was a grave potential for decision on an improper basis, as jurors may have lost sight of specific issues they were called upon to decide and convicted appellant out of a revulsion against his parental demeanor." *Id.* at 397. The trial court did not abuse its discretion in determining that the danger of unfair prejudice substantially outweighed the probative value of the evidence. ·

■ We similarly conclude that Castro's conviction for sexual abuse of a child was not admissible under Rule 609, which permits the admission of a criminal conviction if the court determines "that the probative value ... out-

weighs its prejudicial effect." Tex.R.Civ. Evid. 609(a). Because the court did not abuse its discretion in concluding that the probative value *was substantially outweighed* by the danger of unfair prejudice, we fail to see how the trial court's determination that the probative value of the conviction *did not outweigh* the prejudicial effect could be an abuse.[7]

■ The Porters also cannot show that the whole case turned on the excluded evidence. *Service Lloyds Ins. Co.*, 855 S.W.2d at 822. The Porters presented abundant evidence at trial of Castro's intent:. evidence that Castro had sex with at least three other patients before Lisa soon after each patient left the program, and extensive expert testimony that Castro was "sexually compulsive," had a "difficult time controlling his impulses," and had "grossly manipulated" Lisa's sexual boundaries. This same testimony also provided evidence of the Renaissance defendants' negligence and gross negligence because McLester knew of Castro's involvement with at least one ex-patient, yet took no action to determine whether Castro was using his position as a counselor to manipulate clients into having sex with him. The trial court did not abuse its discretion in excluding the evidence as to Castro and the Renaissance defendants; nor can the Porters show that exclusion of the evidence probably caused the rendition of an improper judgment. *Gee*, 765 S.W.2d at 396.

■ Our decision is strengthened by the fact that the Porters never requested that the trial court limit the evidence to the Re-

7. The Porters argue that the prior acts were admissible on the issue of punitive damages as to both Castro and the Renaissance defendants. *Carr v. Galvan*, 650 S.W.2d 864, 869 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Burleson v. Finley*, 581 S.W.2d 304, 307–08 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). The cases the Porters cite were decided before the effective date of the Rules of Civil Evidence. We conclude that the trial court did not err in determining that the probative value was substantially outweighed by the danger of unfair prejudice because the admission of evidence for punitive damages is subject to Rule 403 analysis. *See Castro v. Sebesta*, 808 S.W.2d 189, 194 (Tex. App.—Houston [1st Dist.] 1991, no writ) (analyzing punitive damages evidence under Rules of Civil Evidence).

The Porters also contend that the evidence was admissible to show the bases for their expert witnesses' testimony. However, the conviction is admissible only for the limited purpose of identifying the bases of the experts' opinions. *Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 885 S.W.2d 603, 631 (Tex.App.—Beaumont 1994, writ requested). The Porters never requested that the evidence be limited to this purpose; they have thus waived any error in this regard. *See* Tex.R.Civ.Evid. 105(b) (if evidence admissible for one purpose but not another is excluded, proponent cannot complain on appeal unless expressly offered evidence for limited admissible purpose only).

naissance defendants only, despite the fact that it is less prejudicial as to the Renaissance defendants. Under Texas Rule of Civil Evidence 105, the Porters' failure to request a limiting instruction precludes consideration of whether the trial court abused its discretion in refusing to admit the evidence to show the Renaissance defendants' negligence and gross negligence. Rule 105 provides:

> When evidence [which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose] is excluded, such exclusion shall not be a ground for complaint on appeal *unless the proponent expressly offers the evidence for its limited, admissible purpose or limits its offer to the party against whom it is admissible.*

Tex.R.Civ.Evid. 105(b) (emphasis added); *see Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 885 S.W.2d 603, 631 (Tex.App.—Beaumont 1994, writ requested). The Porters offered the evidence as proof of *both* Castro's and the Renaissance defendants' liability. As the proponents of the evidence, they never limited the evidence solely to the issue of the Renaissance defendants' liability. *See Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 136 (Tex.App.—Texarkana 1994, no writ) (burden on proponent of the evidence to request its admission for a limited purpose). Therefore, because the Porters never limited their proffer of evidence to each of the defendants individually, we cannot conclude that the trial court's exclusion of the evidence constituted an abuse of discretion. We overrule the Porters' first point of error.

■ The Porters argue in their second point of error that the trial court abused its discretion in excluding evidence of Castro's reputation. Ramona Williams, a counselor who treated Lisa after the incident, testified at trial on an offer of proof about Castro's reputation in the mental health community as a sexual perpetrator and a convicted child molester. Rule 405 provides that "[i]n all cases in which evidence of character ... of a person is admissible, proof may be made by testimony as to reputation." Tex.R.Civ.Evid. 405(a). The trial court concluded that evidence concerning Castro's conviction *was not admissible*; thus, reputation testimony about the conviction logically was not admissible either. Having concluded that the former ruling was not an abuse of discretion, we similarly conclude that the latter does not constitute an abuse of discretion and overrule the second point of error.

■ In their third point of error, the Porters contend that the trial court abused its discretion in excluding evidence of Lisa Porter's state of mind. The trial court sustained the defendants' hearsay objection to Williams's testimony about statements Lisa made during counseling sessions. The Porters argue that the exclusion was harmful because it prevented them from rebutting the Renaissance defendants' contention that Lisa consented to the sexual encounter. The Porters, however, never indicated the substance of the testimony through an offer of proof. When the trial court excludes evidence, failure to make an offer of proof waives any complaint about the exclusion on appeal. Tex.R.Civ.Evid. 103(a)(2); *Weng Enters., Inc. v. Embassy World Travel, Inc.*, 837 S.W.2d 217, 221 (Tex.App.—Houston [1st Dist.] 1992, no writ) ("In the absence of a bill of exception or offer of proof, [the appellate court] has no basis for reviewing a contention that the trial court committed reversible error in excluding the testimony....").

■ The Porters also assert that McLester's statement that "you should have known better," when Lisa informed him of the incident was not inadmissible hearsay. Because McLester's statement was not offered for the truth of the matter asserted but only to show the Renaissance defendants' callous attitude, the trial court erred in excluding McLester's statement. *See* Tex.R.Civ.Evid. 801(d). We conclude, however, that the jury heard the substance of McLester's statement[8] and, thus, any error was harmless. Tex.R.App.P. 81(b); *New Braunfels Factory Outlet*, 872

---

8. Lisa: I told Mac what happened.
 Q: So you are saying Mac said you should have known better?

 Lisa: Yeah, which was real painful because I wasn't out looking for this situation.

S.W.2d at 310. We overrule the Porters' third point of error.

■ The Porters assert in their fourth point of error that the trial court abused its discretion in striking their pleadings pursuant to the Deceptive Trade Practices—Consumer Protection Act ("DTPA"), Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (West 1987 & Supp.1995). The Porters filed their original petition on August 23, 1991, sent notice to the Renaissance defendants of their intent to amend their petition to include the DTPA claims on June 9, 1993, and filed their second amended petition alleging DTPA violations on July 7, 1993. The Renaissance defendants filed their motion to strike on July 12, 1993, which the trial court granted on July 16, 1993. Trial began on July 19, 1993.

■ Texas Rule of Civil Procedure 63 provides that "[p]arties may amend their pleadings ... by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party." Although parties may amend pleadings without leave of court up to seven days before trial, the right to amend is subject to the opposing party's right to show surprise. *See Stevenson v. Koutzarov,* 795 S.W.2d 313, 321 (Tex. App.—Houston [1st Dist.] 1990, writ denied). The trial court's decision to strike an amended pleading will not be overturned absent an abuse of discretion. *See Hardin v. Hardin,* 597 S.W.2d 347, 349–50 (Tex.1980).

*Stevenson* involved a plaintiff who sought to amend his pleadings to allege several new causes of action eight days before trial began. The appellate court ruled that the trial court abused its discretion in *refusing* to strike the amended pleadings because (1) the amended petitions were filed more than two years after the Stevensons became a party;

(2) the amendments were made ten and eight days before trial; (3) the amendments introduced five new causes of action, and increased damages from $30,000 to $16.5 million; (4) the late causes of action were not based on newly discovered matters; and (5) the Stevensons proved surprise because they were not prepared to defend on the new causes of action. *Stevenson,* 795 S.W.2d at 321.

In the present cause, the Porters (1) filed their amended petition asserting the DTPA claims twenty-three months after they filed their original petition; (2) the amendment was filed twelve days before trial; (3) the amendment introduced a new cause of action against the Renaissance defendants, which involved five new material allegations that entitled the Porters to statutory trebling of damages, court costs, and attorney's fees; (4) the late cause of action was based on matters known to the Porters at the time they filed suit; and (5) the Renaissance defendants alleged surprise, arguing that the late claim deprived them of a fair opportunity to conduct discovery, to file a motion for summary judgment, and to prepare a counter-defense in response to the new cause of action.

Because of the similarity between the instant cause and *Stevenson,* where the appellate court concluded that the trial court erred in *refusing* to strike the pleadings, we hold that the trial court did not abuse its discretion in striking the Porters' amended pleadings filed twelve days before trial was scheduled to begin.[9] We overrule the Porters' fourth point of error.

In their fifth point of error, the Porters assert that the trial court erred in granting the Renaissance defendants' motion for judg-

---

9. The Porters contend that the trial court abused its discretion because the Renaissance defendants did not move for a continuance and, thus, did not show surprise. The Porters rely on several cases holding that a party must move for a continuance in order to appeal *the failure to strike* an amended pleading. *See, e.g., Louisiana & Ark. Ry. v. Blakely,* 773 S.W.2d 595, 597 (Tex. App.—Texarkana 1989, writ denied). All of the cases the Porters rely on involved instances where the trial court *allowed* the amended pleading. As the court in *Blakely* noted: "To establish an abuse of discretion by the trial court in *allow-*

*ing the amendment,* the complaining party must show surprise and request a continuance." *Id.* (emphasis added). The Renaissance defendants correctly assert that it would be senseless to require them to request a continuance when the court has granted their motion to strike the amended pleadings because they have received their requested relief. *See id.* (noting that requiring a party to move for a continuance to preserve error on appeal is consistent with notion that a party must exhaust all of its remedies in trial court).

ment n.o.v. because there was some evidence to support the jury's verdict. The Porters pled two causes of action against the Renaissance defendants, negligent hiring/retention[10] and negligent supervision. After a jury verdict finding the Renaissance defendants negligent, the trial court granted judgment n.o.v. for the Renaissance defendants apparently because it agreed with their argument that they owed no duty to the Porters. The Porters urge that the trial court erred in granting the motion.

A trial court may disregard a jury's findings and grant a judgment n.o.v. only if there is no evidence to support the findings. Tex.R.Civ.P. 301; *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). Negligent retention involves "the master's own negligence in ... retaining in his employ an incompetent servant whom the master knows or by the exercise of reasonable care should have known was incompetent or unfit." *Estate of Arrington*, 578 S.W.2d at 178; *see Doe v. Boys Clubs of Greater Dallas, Inc.*, 868 S.W.2d 942, 950 (Tex.App.—Amarillo 1994, writ granted) (claim for negligent hiring/retention requires harm to be a result of employment). The threshold inquiry in a negligent retention case involves duty, which is a question of law for the trial court to decide from the facts surrounding the incident in question. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Although generally there is no duty to control the conduct of third parties, the employer-employee relationship can create a duty on the part of the employer to control the employee's conduct. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). The injury to the plaintiff, however, must be the result of the continued employment of an incompetent employee. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405, 408 (Tex. App.—Corpus Christi 1987, writ denied). If the law did not require such a connection, "an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee." *Id.*

(quoting *Bates v. Doria*, 150 Ill.App.3d 1025, 104 Ill.Dec. 191, 196, 502 N.E.2d 454, 459 (1986)).

The Renaissance defendants argue that the Porters' claims for negligent retention and negligent supervision stretch these doctrines beyond any previous limits because the sexual encounter occurred off-premises, while Castro was off-duty, and several months after the Porters had left the program. Although the Renaissance defendants may be correct that they had no duty under a theory of negligent supervision, we need not address the merits of this issue because of our disposition of the duty question regarding the negligent-retention claim. The Renaissance defendants contend that negligent retention authorizes employer liability for off-duty torts only in situations where the employee commits the tort on the employer's premises or with the employer's chattels. *See Otis Eng'g*, 668 S.W.2d at 309; 30 C.J.S. *Employer–Employee Relationship* § 186, at 264 (1992) ("[I]n cases brought under [negligent retention], the tortious act must, at the very least, occur during the tortfeasor's working hours or when the tort-feasor was acting under color of employment."). We recognize that there are rational limits to an employer's liability for the torts of its off-duty employees. Unlike the Renaissance defendants, however, we believe that the facts of this case did create a duty on the part of the Renaissance defendants to ensure that their employees were competent.

In determining whether a defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Greater Houston Transp. Co.*, 801 S.W.2d at 525. Of these, foreseeability of the risk is the dominant consideration. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). In *Greater Houston Transportation Co.*, the supreme court addressed the analy-

---

**10.** Although the Porters allege both negligent hiring and retention, their claim principally involves the negligent retention of Castro.

sis for duty in an employer-independent contractor relationship. In concluding that the cab company had no duty to admonish its drivers not to carry guns, the court focused on the foreseeability that a shooting would occur. *Greater Houston Transp. Co.,* 801 S.W.2d at 526. The court noted: "[B]efore liability will be imposed, there must be sufficient evidence indicating that the defendant knew or should have known that harm would eventually befall a victim. Absent such a showing, a defendant is absolved of liability." *Id.*

We conclude that the injury Lisa suffered was foreseeable to the Renaissance defendants. The Renaissance defendants knew or had reason to know that Castro was an incompetent counselor before the incident with Lisa occurred. *See Estate of Arrington,* 578 S.W.2d at 178. Castro began a sexual relationship with Brenda Thibideaux about a week after she left the program. Castro testified that the Renaissance Program had a policy prohibiting employees from dating participants within two years after they completed the program. McLester testified that he had informed Castro that it was inappropriate to date participants for at least one year after they left the program. McLester testified that Castro approached him, asked when dating was permissible, and then informed McLester that he was involved with Thibideaux. McLester never investigated whether the requisite amount of time had passed and never questioned Castro about possible sexual liaisons with other patients and ex-patients. McLester was also aware that an ex-patient had expressed an interest in having Castro's baby; this situation was not investigated to determine whether Castro had behaved inappropriately.[11]

Despite these warning signals, the Renaissance defendants took no action regarding Castro's affair with Thibideaux and failed to investigate whether Castro had become involved with other female participants in the program. At trial, Castro admitted that he had sexual relations with at least three other participants before Lisa. Castro also testified that if the Renaissance defendants had

approached him in a non-threatening manner, he would have admitted these previous sexual encounters. The Renaissance defendants clearly had reason to suspect that Castro might be an incompetent employee based on his affair with at least one expatient; with any type of investigation, they would have had concrete knowledge of Castro's unfitness as a counselor. We conclude that the Renaissance defendants had a duty to investigate Castro's conduct at the time they became aware of his relationship with Thibideaux. *See Greater Houston Transp. Co.,* 801 S.W.2d at 526 (employer can be held liable if sufficient evidence that employer knew or had reason to know that harm would occur).

The fact that the sexual encounter occurred off-premises and after-hours does not absolve the Renaissance defendants of liability. In this situation, Castro met his victims through his job, cultivated their trust through his role as a CADAC counselor, and then manipulated his position for his own sexual gratification. Castro gained access to Lisa's confidence and to her home through his cloak of responsibility as a Renaissance counselor. We conclude that the Renaissance defendants owed Lisa a duty to use reasonable care in the hiring and retention of competent, sexually-appropriate counselors.

Indeed, we believe that the Renaissance defendants had a heightened obligation to hire and retain competent counselors because their program treated psychologically fragile clientele. Several Texas cases have held that a higher obligation is owed to certain groups because of their vulnerabilities. *See, e.g., Boys Clubs,* 868 S.W.2d at 951 (higher duty owed to children); *Deerings W. Nursing Ctr. v. Scott,* 787 S.W.2d 494, 498–99 (Tex.App.—El Paso 1990, writ denied) (Fuller, J., concurring) (high degree of care owed to elderly). Testimony at trial indicated that persons in a program like Renaissance's often have underlying psychological disabilities such as sexual abuse, post-traumatic stress disorder, severe depression, and difficulty with interpersonal relationships. Individuals, such as Lisa, who have been sexually

---

11. We also note that McLester, as Castro's supervisor, was aware of Castro's sexual-abuse conviction since McLester had testified at Castro's sentencing hearing.

abused as children are especially vulnerable to sexual exploitation by a counselor. Given the vulnerable population it served, we agree with the Porters that the Renaissance defendants owed a duty to their clients to ensure that their counselors were competent. We conclude that the trial court erred in granting judgment n.o.v. because the Renaissance defendants had a duty to examine Castro's competence at the time they discovered his violation of the program's policies. We sustain the Porters' fifth point of error.

## CONCLUSION

The trial court erred only in granting the Renaissance defendants' motion for judgment n.o.v. Because the Renaissance defendants were liable for the negligent retention of Castro, we need not address whether they were also liable for negligent supervision. We reverse the portion of the trial court's judgment that orders that the Porters take nothing against the Renaissance defendants, and render judgment that Castro and the Renaissance defendants are jointly and severally liable to the Porters for the injuries they suffered. The judgment of the trial court is affirmed in all other respects.

POWERS, J., not participating.