# NO. 12-23-00083-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHN MACON, LESLIE MACON AND MACKENZIE MACON, APPELLANTS* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *BRAUM'S, INC., DEMETRIA ANN BEHAN AND EMMANUEL DAVIS, APPELLEES* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellants, John Macon, Leslie Macon, and Mackenzie Macon, appeal the trial court's granting of summary judgment in favor of Appellees, Braum's, Inc. (Braum's), Demetria Ann Behan, and Emmanuel Davis.[1]  We affirm the trial court's judgment.

### BACKGROUND

Braum's is a restaurant and fresh market chain that operates stores in five states and has approximately 12,000 employees, roughly 9,000 of whom work part time.  Braum's stores have an open layout and are equipped with security cameras, and the internal doors do not have locks.  An adult supervisor or manager is always present during shifts worked by part-time employees.  According to Braum's corporate representative, Braum's only conducts background checks of applicants for full-time positions or existing employees who are being considered for promotion because part-time employees do not supervise other employees and are not in the position to exercise control or authority over other employees.

---

[1] Because Appellants have the same surname, when referring to them individually, we will use their first names for clarity and brevity, and we will refer to them collectively as "the Macons."  We will refer to Behan and Davis individually by their surnames, and we will refer to Braum's, Behan, and Davis collectively as "Appellees."

Mackenzie Macon and Ryan Harvey Beaulieu worked as salesclerks at the Braum's store in Athens, Texas, in 2019, when Mackenzie was sixteen years old and Beaulieu, a registered sex offender, was twenty years old.[2]  Mackenzie and Beaulieu met during their employment at Braum's, and they began exchanging messages and photographs via Instagram.  Salesclerks at Braum's prepare menu items, take customers' orders, perform cashier duties, serve prepared orders, and carry out various cleaning and stocking duties.  Behan was the general manager of the Athens store, and Davis was an assistant manager.  On March 26, 2019, Beaulieu was arrested during his shift at Braum's for failure to comply with sex offender registration requirements.[3]

Mackenzie and Beaulieu engaged in sexual activity on three occasions during April 2019: at her home after she gave Beaulieu the address, at her church, and at Beaulieu's apartment after she surreptitiously left her home.  Mackenzie was aware of Beaulieu's age but was unaware that he is a registered sex offender.  According to Mackenzie, Beaulieu did not force her to engage in sexual activity with him; however, because Mackenzie was a minor, she could not legally consent to sexual activity.  One of Mackenzie's parents learned that Beaulieu is a registered sex offender and informed the Athens Braum's store by phone.  Braum's terminated Beaulieu's employment on April 27, 2019.  After the police received a Crime Stoppers tip from a Braum's employee, an investigation began, and Beaulieu was ultimately convicted of sexual assault of a child and online solicitation of a minor for his offenses against Mackenzie.

Mackenzie and her parents, John and Leslie, filed suit against Braum's, Behan, and Davis,[4] asserting causes of action for assisting and participating; negligent hiring, supervision, training, and retention; negligent failure to warn; intentional infliction of emotional distress; and exemplary damages for alleged malice and gross negligence.  According to the Macons, Braum's job application form and store operations manual both require job applicants to complete a criminal history authorization form authorizing Braum's to conduct a background check.  The Macons also

---

[2] Beaulieu was convicted of indecency with a child in 2018.

[3] The arresting officer testified by deposition that when he arrested Beaulieu, he told him the reason for the arrest while a female manager stood two or three feet away. At his deposition, Davis testified that he was the highest-ranking manager present during the arrest, and he called Behan to inform her and told her the officer did not state the reason for the arrest.  Behan testified by deposition that when she later asked Beaulieu why he was arrested, Beaulieu told her that he was arrested for "brass knuckles."  Both Behan and Davis averred in declarations that they were unaware of Beaulieu's status as a registered sex offender until Mackenzie's parents subsequently contacted Braum's.

[4] Appellants initially sued Beaulieu, but later nonsuited him, and he is not a party to this appeal.

pleaded that the cost of performing a criminal background check on job applicants is minimal, and the Sex Offender Registry on the Texas Department of Public Safety's website is both publicly accessible and free of charge. In addition, the Macons contended that Braum's failed to establish and reinforce policies, procedures, and training regarding safely employing minors and screening prospective employees, and they asserted that Beaulieu's application for employment "included apparent false information, multiple red flags, and factual inconsistencies that should have notified and alerted Braum's, Davis, and Behan, at minimum, of issues to be investigated[.]" The Macons further alleged that Braum's gave Beaulieu the opportunity to "identify, groom, and victimize minor females[,]" failed to inform them of Beaulieu's status as a registered sex offender, and failed to follow and enforce its own policies.

Appellees jointly filed a hybrid motion for summary judgment as to John's claims and Leslie's claims, asserting, among other things, that employers do not owe a duty to parents to protect a minor employee from "off-duty, off-property" conduct. Appellees also argued that they did not owe John and Leslie a duty to conduct a background check of Beaulieu and contended that an employer need only investigate an employee to determine if the employee is fit to perform the job duties he is hired to perform. In response, John and Leslie contended, among other things, that Appellees owed them a duty "to protect or warn them that their daughter was working alongside a convicted child predator" because the hiring of an employee with a history of sexually assaulting minors was not "a hazard that could be easily observed by the . . . underaged co-workers and their parents." According to John and Leslie, the duty to protect children extends to their parents and does not require a special relationship. Additionally, John and Leslie contended that because hiring minors is part of Braum's business plan, Braum's owed them a duty "to exercise reasonable care in selecting employees to work alongside children to prevent an unreasonable risk of harm to its minor employees and their parents, such as on-site exposure to sexual predators of children, even when the harm caused by such exposure occurs off-duty and off-premises."

Behan and Davis filed another hybrid motion for summary judgment as to the Macons' claims, in which they asserted that because they acted within the course and scope of their employment with Braum's, they could not be held individually liable as to any of the Macons' claims.[5] Specifically, Behan and Davis contended that, as agents of Braum's, they are not

---

[5] Behan and Davis averred in their declarations that during all of the events alleged in the Macons' petition, they acted within the course and scope of their employment.

personally liable for negligence committed during the course and scope of their employment unless they owe an independent duty of reasonable care apart from the duty Braum's owed. In response, the Macons argued that Behan and Davis owed legal duties to them independent of the duties owed by Braum's. According to the Macons, Behan and Davis owed Mackenzie "a duty to act reasonably" when hiring, training, supervising, and retaining employees to avoid an unreasonable risk of harm, "which would include a duty to warn their minor employees that a convicted child predator had been hired to work alongside them." The Macons also argued that Texas's strong public policy of protecting children supports the imposition of a duty on Behan and Davis.

Appellees jointly filed another hybrid motion for summary judgment as to each of Mackenzie's claims, in which they contended, among other things, that they did not owe a legal duty to Mackenzie. In response, Mackenzie argued that Braum's owed her a duty "to protect or warn her against working alongside a convicted child predator[.]" Specifically, Mackenzie asserted that Appellees owed her a duty because she was a minor, minors constitute a significant portion of the workforce of Braum's, and public policy favors protecting minors.

The trial judge signed an order granting each of the motions for summary judgment, in which he rendered judgment in favor of Appellees on all of the Macons' causes of action and ordered that the Macons take nothing. This appeal followed.

### SUMMARY JUDGMENT

In their sole appellate issue, the Macons contend the trial court erred by granting Appellees' motions for summary judgment. The Macons state in their brief that they do not challenge the trial court's granting of summary judgment as to their claims for assisting and participating, intentional infliction of emotional distress, and exemplary damages based on malice. Thus, the Macons' only complaints on appeal concern the granting of summary judgment as to their claims for negligent failure to warn; negligent hiring, training, and supervision; and gross negligence.

**Standards of Review and Applicable Law**

We review both no-evidence and traditional motions for summary judgment de novo, and we "examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion". *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005); *see Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We are not required to ascertain the credibility of affiants or to

determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof. *See Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (Tex. 1952); *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 508 (Tex. App.—Tyler 2008, pet. denied). The movant for traditional summary judgment has the burden of demonstrating that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). If the movant establishes a right to summary judgment, the nonmovant has the burden to respond to the motion and present any issues that would preclude summary judgment. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). A defendant who conclusively negates at least one essential element of the nonmovant's cause of action is entitled to summary judgment as to that cause of action. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *White v. Smith*, 591 S.W.3d 198, 200 (Tex. App.—Tyler 2019, no pet.). When, as here, the trial court does not specify the grounds on which it granted summary judgment, we will affirm if any of the theories advanced have merit. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

Generally, when a party moves for both a traditional and a no-evidence summary judgment, we first review the trial court's summary judgment under the no-evidence standard of Rule 166a(i), and if a no-evidence summary judgment was properly granted, we do not reach arguments regarding the traditional motion for summary judgment. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). "However, this rule is not absolute." *Neurodiagnostic Tex., L.L.C. v. Pierce*, 506 S.W.3d 153, 163 (Tex. App.—Tyler 2016, no pet.) (citing *Dunn v. Clairmont Tyler, LP*, 271 S.W.3d 867, 870 (Tex. App.—Tyler 2008, no pet.)). In the instant case, because the issue of legal duty is dispositive, and said issue fits more appropriately within the framework of a traditional summary judgment analysis, we will review the propriety of granting the motions for summary judgment on traditional grounds first. *See id*.

**Legal Duty**

A plaintiff asserting a cause of action for negligence must establish three elements: (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach of duty proximately caused the plaintiff's damages. *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022); *Urena*, 162 S.W.3d at 550; *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The existence of a legal duty of care is also an

5

element of a claim for gross negligence.  ***AEP Tex. Cent. Co. v. Arredondo***, 612 S.W.3d 289, 298-99 (Tex. 2020); ***City of Waco v. Kirwan***, 298 S.W.3d 618, 623 (Tex. 2009).

A duty is a legal obligation that requires the defendant to conform to a certain standard of conduct to protect others against foreseeable risks.  ***Midwest Employers Cas. Co. v. Harpole***, 293 S.W.3d 770, 776 (Tex. App.—San Antonio 2009, no pet.).  Whether a duty exists is a threshold inquiry, and a party who has no legal duty cannot be held liable for negligence.  ***Kroger Co. v. Elwood***, 197 S.W.3d 793, 794 (Tex. 2006).  When the facts giving rise to a duty are undisputed, the determination of whether a duty exists is a question of law, which is determined based on the facts surrounding the occurrence.  ***Pagayon v. Exxon Mobil Corp.***, 536 S.W.3d 499, 504 (Tex. 2017); ***Tri v. J.T.T.***, 162 S.W.3d 552, 563 (Tex. 2005); ***Walker v. Harris***, 924 S.W.2d 375, 377 (Tex. 1996).

Texas law currently does not impose a general duty to control others; however, a special relationship, such as that between employer and employee, may give rise to certain duties.  ***Centeq v. Siegler***, 899 S.W.2d 195, 197 (Tex. 1995); ***Phillips***, 801 S.W.2d at 525; ***Otis Eng'g Corp. v. Clark***, 668 S.W.2d 307, 309 (Tex. 1983); ***Douglas v. Hardy***, 600 S.W.3d 358, 367 (Tex. App.—Tyler 2019, no pet.).  Although an employer is not an insurer of its employees' safety at work, an employer has a duty to use ordinary care in providing a safe workplace.  ***Leitch v. Hornsby***, 935 S.W.2d 114, 117 (Tex. 1996).  This duty is non-delegable, and it encompasses obligations to provide rules and regulations for employees' safety, to furnish safe machinery and instrumentalities, and to select careful and competent fellow servants.  ***Burk Royalty Co. v. Walls***, 616 S.W.2d 911, 923-24 (Tex. 1981).  "An employer owes a duty to its other employees and to the general public to ascertain the qualifications and competence of the employees it hires, especially when the employees are engaged in occupations that require skill or experience and that could be hazardous to the safety of others."  ***Wise v. Complete Staffing Servs., Inc.***, 56 S.W.3d 900, 902 (Tex. App.—Texarkana 2001, no pet.); *see also* ***Dangerfield v. Ormsby***, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.).  This rule against negligent hiring "is aimed, not at avoiding a general propensity for bad acts, but to protect the public and fellow employees from workers who are unsafe or dangerous on the job."  ***Wise***, 56 S.W.2d at 903.  The employee's alleged incompetency must be job related.  ***Id***.  Employers generally have no duty to conduct a criminal background check of an employee unless the employee's criminal history is related to the

duties of his job. *Id*. (citing *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 811 (Tex. App.—Austin 1997, no writ)).

"[T]he Texas Supreme Court has 'never expressly set out what duty an employer has in hiring employees[.]'" *Douglas*, 600 S.W.3d at 367 (quoting *Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012)). "An employer may be liable to a third party if it hires, retains, or supervises an employee whom it either knows or should have known is not competent or fit for the job and whose incompetence or unfitness creates an unreasonable risk of harm to others because of the employee's job-related duties." *Dole v. YUM! Brands, Inc.*, 639 S.W.3d 214, 226 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *see also* *Mindi M. v. Flagship Hotel, Ltd.*, 439 S.W.3d 551, 561 (Tex. App.—Houston [14th Dist.] 2014, *pet. granted, judgm't vacated w.r.m.*) (holding that the scope of an employer's inquiry in screening employees "will turn on the risks associated with the employee's job-related duties"). Employers generally do not owe a duty to third parties for off-duty employees' tortious activities that occur away from the work site, but an employer may be liable for torts that an off-duty employee commits on the employer's premises or with its chattels. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 403, 404-05 (Tex. 2009). However, employers have a duty to prevent injuries to others if an employee's job duties will allow him special access to a particularly vulnerable group. *YUM! Brands*, 639 S.W.3d at 227; *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 33 (Tex. App.—El Paso 2006, no pet.); *Wise*, 56 S.W.3d at 904-05; *Guidry*, 944 S.W.2d at 810; *see also* *Massage Heights Franchising, LLC v. Hagman*, __ S.W.3d __, No.14-22-00160-CV, 2023 WL 7029384, at *5 (Tex. App.—Houston [14th Dist.] Oct. 26, 2023, no pet. h.) (not yet released for publication).

When determining whether a particular defendant owes a legal duty, courts weigh the risk involved, the foreseeability of the risk, and the likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Pagayon*, 536 S.W.3d at 503-04; *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290-91 (Tex. 1996); *Phillips*, 801 S.W.2d at 525; *Douglas*, 600 S.W.3d at 368. These factors are often referred to as the *Phillips* factors. *Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 583 (Tex. 2023). Foreseeability of the risk is the most important factor to consider, but foreseeability alone does not create a duty. *Kirwan*, 298 S.W.3d at 624. Striking the correct balance of the various *Phillips* factors is difficult "because of the myriad circumstances that can arise." *Douglas*, 600 S.W.3d at

368 (quoting *Pagayon*, 536 S.W.3d at 504). The Texas Supreme Court has noted that "the courts of appeals have often held employers to very general duties, but they have not weighed the factors that determine whether a duty exists, and what it is." *Pagayon*, 536 S.W.3d at 505-06 (footnote omitted). "These . . . are matters of law to be weighed and determined by the court before a duty is applied." *Id*. at 506. "It is not enough to simply require employers, or others, to exercise ordinary care in all circumstances. Texas law requires the court to be more specific, to balance the relevant factors in determining the existence, scope, and elements of legal duties." *Id*.

Pursuant to the doctrine of respondeat superior, an employer is vicariously liable for an employee's negligent conduct that occurred while the employee was acting in the course and scope of his employment; that is, when an employee is acting within the scope of his general authority, in furtherance of the employer's business, and to accomplish a task for which he was hired. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018). An employee is within the course and scope of his employment when he acts within the scope of his general authority, in furtherance of the employer's business and for the accomplishment of the object for which he was hired. *Id*. An employee acting within the course and scope of his employment is not individually liable for negligence unless the employee owes an independent duty to the plaintiff. *Tri*, 162 S.W.3d at 562-63; *Leitch*, 935 S.W.2d at 117. In other words, individual liability cannot be imposed on employees when the employer and its employees allegedly committed identical negligent acts or omissions. *In re Butt*, 495 S.W.3d 455, 466-67 (Tex. App.—Corpus Christi 2016, orig. proceeding); *see also Tri*, 162 S.W.3d at 562-63. Rather, only the employer is liable for the employees' alleged negligence under those circumstances. *Id.*

**Analysis**

To recover on their claims for negligence and gross negligence, the Macons bore the burden of proving that Braum's, Behan, and Davis each owed them a legal duty. *See Kenyon*, 644 S.W.3d at 144; *Arredondo*, 612 S.W.3d at 298-99; *Kirwan*, 298 S.W.3d at 623; *Urena*, 162 S.W.3d at 550; *Phillips*, 801 S.W.2d at 525; *see also Dangerfield*, 264 S.W.3d at 912 (holding that "[n]egligent hiring, retention, and supervision claims are all simple negligence causes of action"). Each of the motions for summary judgment asserted that no duty existed.

As Mackenzie's employer, Braum's owed her a duty to use ordinary care in providing a safe workplace. *See Leitch*, 935 S.W.2d at 117. Braum's also owed a duty to Mackenzie, as well as to the general public, to ascertain the qualifications and competence of its employees to ensure

that its employees are fit to safely perform their jobs. *See Wise*, 56 S.W.3d at 902; *see also Dangerfield*, 264 S.W.3d at 912. It is undisputed that Braum's hired Beaulieu as a salesclerk, so Beaulieu's job duties included such tasks as taking customers' orders, preparing food, serving as a cashier, cleaning, and stocking. It is also undisputed that Beaulieu's sexual activity with Mackenzie did not occur at Braum's and did not involve chattels owned by Braum's. Nothing about the salesclerk job for which Braum's hired Beaulieu required skill or experience, and Beaulieu's sexual assaults of Mackenzie while off duty and away from the Braum's store were not the result of any job-related incompetency; rather, the injuries to Mackenzie resulted from Beaulieu's criminal acts. *See Wise*, 56 S.W.3d at 903; *see also Dangerfield*, 264 S.W.3d at 912. Furthermore, we conclude that because Beaulieu's criminal history was not related to the duties of his job, Braum's did not have a duty to conduct a criminal background check or check the sex offender registry when hiring him. *See Wise*, 56 S.W.3d at 903. Braum's did not employ John and Leslie; therefore, no special relationship existed between them, and Braum's did not owe a duty to them beyond the duty it owed the general public, as set forth above. *See id.* at 902; *see also Dangerfield*, 264 S.W.3d at 912.

Appellants argue that Texas's strong public policy of protecting minors favors finding that Appellees owe a heightened duty to Mackenzie, as well as to John and Leslie. Appellants point to several cases in which courts concluded that a heightened duty existed. We will discuss each of these cases in turn. In *Golden Spread*, the mother of a minor who was molested by his scoutmaster sued Boy Scouts of America (BSA) and Golden Spread Council of the Boy Scouts of America (GSC), for negligent screening, training, supervision, and retention. *Golden Spread*, 926 S.W.2d at 288-89. After balancing the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant, the Texas Supreme Court noted the strong policy of protecting children from abuse and concluded that "[o]n balance, all of these factors favor the imposition of a duty[.]" *Id.* at 291. In addition, the Court concluded that GSC owed a duty to the minor, as well as to his parents, because the organization brought the minor into contact with a person that the organization knew or should have known was peculiarly likely to commit intentional misconduct, under circumstances that afford a peculiar opportunity or temptation for such misconduct. *Id.*

In ***Read v. Scott Fetzer Company***, a customer who was sexually assaulted in her home by a door-to-door vacuum cleaner salesman sued the manufacturer and distributor. ***Read v. Scott Fetzer Co.***, 990 S.W.2d 732, 733 (Tex. 1998). The Texas Supreme Court held that the vacuum cleaner manufacturer, which retained control over vacuum cleaner sales by requiring that its products be sold exclusively via in-home demonstrations, owed a duty to customers "to exercise that control reasonably." *Id*. at 735-36. Importantly, the ***Read*** court noted that both ***Golden Spread*** and ***Phillips*** involved a straightforward common-law duty analysis, and distinguished those cases by clarifying that its holding "is premised on the duty emanating from [manufacturer]'s retained control over the details of the work." *Id*. at 736. In ***Porter v. Nemir***, a client of an outpatient chemical dependency program asserted claims for negligence and gross negligence after a counselor allegedly sexually assaulted her off the premises and after hours. ***Porter v. Nemir***, 900 S.W.2d 376, 379-80, 385-86 (Tex. App.—Austin 1995, no writ). The court stated that the plaintiff's injury was foreseeable given that defendants knew that the counselor was "an incompetent counselor" because the defendants knew that he engaged in a dating relationship with a client before the incident with the plaintiff occurred, and the counselor cultivated clients' trust through his role as their counselor. *Id*. at 386. The court concluded that the defendants owed the plaintiff "a duty to use reasonable care in the hiring and retention of competent, sexually-appropriate counselors." *Id*. After noting that several Texas cases held that "a higher obligation is owed to certain groups because of their vulnerabilities[,]" the ***Porter*** court concluded that the "defendants had a heightened obligation to hire and retain competent counselors because their program treated psychologically fragile clientele." *Id*.

As support for their argument that Appellees owe a heightened duty, Appellants also cite ***Deerings West Nursing Center v. Scott***. In ***Scott***, the plaintiff, an elderly woman who was visiting a patient at the nursing home, filed a lawsuit asserting claims for negligence and gross negligence after an unlicensed "nurse employee" slapped her and pinned her to the floor. ***Deerings W. Nursing Ctr. v. Scott***, 787 S.W.2d 494, 495 (Tex. App.—El Paso 1990, writ denied). The ***Scott*** court analogized negligent hiring to negligent entrustment by an automobile owner, noted that "[i]t is predictable that elderly patients will be visited by elderly friends and family[,]" and concluded that "[t]he nursing home had a duty to exercise reasonable care in the selection of its medical staff." *Id*. at 495-96. The ***Scott*** court also concluded that "it is reasonable to anticipate that an injury would result as a natural and probable consequence of that negligent hiring." *Id*. at 496. In

10

addition, Appellants cite ***C.W. v. Zirus***, in which the plaintiffs and their legal representatives asserted claims stemming from their molestation by a camp counselor. ***C.W. v. Zirus***, No. SA-10-CV-1044-XR, 2012 WL 3776978, at \*1 (W.D. Tex. Aug. 29, 2012). The ***Zirus*** court concluded that the same factors that weighed in favor of imposing a duty in ***Golden Spread*** likewise weigh in favor of imposing a duty because the defendant "was aware of the general risk of sexual abuse" associated with its program, in which young adults hired as camp counselors would be in close contact with children. ***Id***. at \*4.

We conclude that ***Golden Spread***, ***Read***, ***Porter***, ***Scott***, and ***Zirus*** are distinguishable. Each of these cases involved both (1) a vulnerable group and (2) circumstances of employment that provided a peculiar opportunity for an employee to commit intentional misconduct. *See **Read***, 990 S.W.2d at 735-36 (holding that vacuum cleaner manufacturer who retained control over details of the work owed duty to customers when it required that products be sold exclusively via in-home demonstrations, *i.e.* where customers might be alone with salesman and therefore vulnerable); ***Golden Spread***, 926 S.W.2d at 288-89 (holding that scouting organization owed duty to minor and his parents because organization knew or should have known that circumstances of working with children as their mentor would provide peculiar opportunity for employee to engage in intentional misconduct); ***Porter***, 900 S.W.2d at 386 (holding that employer of drug counselor owed higher duty because counselor's job was position of trust and employer provided its counselors access to psychologically fragile clientele); ***Scott***, 787 S.W.2d at 495-96 (holding that nursing home owed duty to exercise reasonable care in selecting nursing staff due to nurses' access to elderly patients and their elderly friends and families); ***Zirus***, 2012 WL 3776978, at \*1 (holding that camp counselor's employer owed duty to child plaintiffs and legal representatives because camp counselors would be in close contact with children and employer knew of risk of sexual abuse).

Appellants correctly cite ***Guidry*** for the proposition that liability will be imposed when an employer brings an employee, whom it knows or should know is particularly likely to commit intentional misconduct, into contact with a vulnerable person, under circumstances that afford a peculiar opportunity or temptation for such misconduct. However, Appellants ignore the ***Guidry*** court's analysis and ruling. In ***Guidry***, a long-haul truck driver with a history of sexual misconduct stopped for a break. ***Guidry,*** 944 S.W.2d at 808-09. The driver encountered Guidry and raped her, and she sued the driver's employer, National Freight (National), asserting causes of action for negligent hiring, supervision, and retention. ***Id*** at 809. National filed a motion for summary

judgment, in which it argued that it owed no duty to Guidry. *Id*. The *Guidry* court acknowledged that a heightened duty may exist as to an employer who brings a vulnerable person into contact with its employee when the employer knows or should know that the employee is particularly likely to commit intentional misconduct "under circumstances which afford a peculiar opportunity or temptation for such misconduct." *Id*. at 810. The Court discussed *Read*, *Golden Spread*, *Porter*, *Scott*, and *Deerings*, and explained that the heightened duty imposed in those cases was predicated upon the employer's placement of the tortfeasor "into a special relationship of trust with a vulnerable group[.]" *Id*. The *Guidry* court also considered the *Phillips* factors and concluded that (1) National could not foresee the risk that a driver would commit sexual assault, (2) National operates a lawful business that performs a needed service, (3) imposing a duty to perform a nationwide criminal background check on all of its current and prospective drivers would create a significant administrative burden for National, and (4) National's failure to follow its own hiring guidelines did not create a duty. *Id*. at 811. The Court therefore concluded that no duty existed. *Id*. at 811-12.

We conclude that the facts of the instant case are most like those of *Guidry*. As the Guidry court observed, in *Read*, *Golden Spread*, *Porter*, *Scott*, and *Zirus*, the heightened duty in those cases emanated from the employer's placing of the tortfeasor employee into a special relationship of trust with a vulnerable group under circumstances that afforded a peculiar opportunity or temptation for intentional misconduct. *Id*. at 810. As a minor, Mackenzie was unquestionably a member of a vulnerable group. However, unlike *Golden Spread*, *Porter*, *Scott*, *Read*, and *Zirus*, nothing about the circumstances of Beaulieu's employment as a salesclerk in a Braum's restaurant and market, which had an open layout, security cameras, and internal doors without locks, provided Beaulieu a peculiar opportunity to commit intentional misconduct. The undisputed summary judgment evidence established that an adult manager or supervisor was always present during shifts worked by part-time employees, such as Mackenzie. Beaulieu did not supervise Mackenzie, and his employment with Braum's did not place him in a special position of trust, mentorship, or counseling with respect to her.

Having concluded that the cases upon which the Macons relied do not support imposition of a duty, we now apply the *Phillips* factors, which require us to weigh the risk involved, the foreseeability of the risk, and the likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of

12

placing the burden on the defendant. *Pagayon*, 536 S.W.3d at 503-04; *Golden Spread*, 926 S.W.2d at 290-91; *Phillips*, 801 S.W.2d at 525; *Douglas*, 600 S.W.3d at 368. Public policy undoubtedly favors protecting minors, who are vulnerable to abuse due to their age, from sexual misconduct; however, we conclude that the risk that employment as a salesclerk at a restaurant and market would provide a peculiar opportunity for intentional sexual misconduct against minors is low, as is the likelihood of such an injury. *See Pagayon*, 536 S.W.3d at 503-04; *Golden Spread*, 926 S.W.2d at 290-91; *Phillips*, 801 S.W.2d at 525; *Douglas*, 600 S.W.3d at 368. Although, as a general proposition, it is foreseeable that a registered sex offender may reoffend, we conclude that under the facts presented in the instant case, Braum's could not foresee Beaulieu's off-duty, off-premises statutory rape of Mackenzie. *See Timberwalk Apartments Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998) (holding that no legal duty to prevent unforeseeable criminal acts exists); *see also Pagayon*, 536 S.W.3d at 503-04; *Golden Spread*, 926 S.W.2d at 290-91; *Guidry*, 944 S.W.2d at 811 (holding that trucking company could not foresee that driver would stop and rape plaintiff); *Phillips*, 801 S.W.2d at 525; *Douglas*, 600 S.W.3d at 368.

Braum's operates a lawful business which serves food and provides employment, so it possesses some social utility. *See Pagayon*, 536 S.W.3d at 503-04; *Golden Spread*, 926 S.W.2d at 290-91; *Phillips*, 801 S.W.2d at 525; *Douglas*, 600 S.W.3d at 368. Imposing a duty to check the sex offender registry or to conduct a criminal background check on all employees would create a significant administrative burden for Braum's, and the scope of such a duty would be vast. *See Guidry*, 944 S.W.2d at 811. Such a duty could conceivably encompass an obligation to (1) check the sex offender registries of multiple states, (2) check multiple sources, and (3) perform multiple background checks, not only when hiring, but on an ongoing basis after hiring an employee. *See id*. In addition, assuming without deciding that Braum's failed to enforce its own policies, an employer's internal policies or procedures, standing alone, do not create a negligence duty when none would otherwise exist. *See Mata v. Argos USA LLC*, No. 06-21-00089-CV, 2022 WL 1193671, at *8 (Tex. App.—Texarkana Apr. 22, 2022, no pet.) (mem. op.) (citing *Entex v. Gonzalez*, 94 S.W.3d 1, 10 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)); *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Properties, L.C.*, 323 S.W.3d 322, 351-52 (Tex. App.—Beaumont 2010, pet. denied). After weighing the *Phillips* factors, we conclude that placing such a significant duty on Braum's would render Braum's an insurer of its employees' safety, both on and off its premises,

and would impose too great a burden on the employment relationship. *See **Pagayon***, 536 S.W.3d at 507-08; ***Douglas***, 600 S.W.3d at 371.

With respect to Behan and Davis, it is undisputed that they were acting within the course and scope of their employment with Braum's. As explained in detail above, none of the Appellees owed a heightened duty to Mackenzie or her parents because the circumstances of Beaulieu's employment at Braum's did not provide him a peculiar opportunity to commit intentional misconduct against her. Because such an alleged heightened duty was the sole "independent duty" that the Macons contend Behan and Davis owed to them, and the Macons asserted identical negligent acts or omissions against Braum's, the trial court did not err by granting summary judgment in favor of Behan and Davis *See **In re Butt***, 495 S.W.3d at 466-67; *see also **Tri***, 162 S.W.3d at 562-63.

For all the above reasons, we conclude that Appellees conclusively negated the existence of a duty to Mackenzie, John, and Leslie. *See **Fernandez***, 315 S.W.3d at 508; ***White***, 591 S.W.3d at 200. Because duty is an essential element of the Macons' causes of action for negligence as well as gross negligence, the trial court properly granted summary judgment in favor of Appellees. *See **Kenyon***, 644 S.W.3d at 144; ***Arredondo***, 612 S.W.3d at 298-99; ***Kirwan***, 298 S.W.3d at 623; ***Urena***, 162 S.W.3d at 550; ***Phillips***, 801 S.W.2d at 525; *see also* TEX. R. CIV. P. 166a(c). Accordingly, we overrule the Macons' sole issue.

## DISPOSITION

Having overruled the Macons' sole issue, we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered December 14, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 14, 2023**

**NO. 12-23-00083-CV**

**JOHN MACON, LESLIE MACON AND MACKENZIE MACON,**
Appellants
V.
**BRAUM'S, INC., DEMETRIA ANN BEHAN AND EMMANUEL DAVIS,**
Appellees

---

Appeal from the 3rd District Court

of Henderson County, Texas (Tr.Ct.No. CV19-0444-3)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, John Macon, Leslie Macon, and Mackenzie Macon, for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*